43 P.3d 782

**Tina L. MOORE, Claimant–Respondent,**

v.

**MELALEUCA, INC., Employer–Appellant.**

and

**State of Idaho, Department of Labor, Respondent.**

**No. 27078.**

Supreme Court of Idaho, Boise, January 2002 Term.

March 12, 2002.

Thomsen & Stephens, P.A., Idaho Falls, for appellant.

Tina L. Moore, Idaho Falls, respondent pro se.

Hon. Alan G. Lance, Attorney General; Evelyn Thomas, Deputy Attorney General, Boise, for respondent Department of Labor.

WALTERS, Justice.

This is a review of the Industrial Commission's decision granting unemployment benefits to Tina Moore. The employer, Melaleuca, Inc., is the appellant. The Department of Labor and the employee, Moore, are the respondents. Melaleuca argues that the Commission erred by deciding that Moore's appeal by protest of an adverse eligibility determination by a claims examiner was timely, and that the Commission erred further when it decided ultimately, on the merits, that Moore was entitled to unemployment benefits. The Department of Labor joins in Melaleuca's contention that Moore's appeal from the claims examiner's denial of benefits was untimely. Moore did not appear nor file a written brief in response to the issues raised in this appeal.

We hold that the Commission did not err in ruling that Moore's appeal was timely. We also affirm the Commission's decision that Moore was entitled to unemployment benefits.

## FACTS AND PROCEDURE

Tina Moore was employed in the marketing department of Melaleuca, Inc., developing and working on a prestige skin-care line for the company. She claims that from the time she informed the company that she was pregnant in January of 1999, she was subjected to inappropriate sexual remarks from one of her immediate supervisors and to continuing sexual discrimination from the chief operations officer who oversaw her po-

sition. After her maternity leave, Moore returned to work, but the work environment did not improve, affecting her physical and mental well-being. In March of 2000, following a performance review by her supervisor, Moore received a two and one-half percent pay increase. Believing that the "extremely low" raise was not warranted based on her work performance for 1999 but instead was due to discriminatory factors, Moore quit her job at Melaleuca, Inc., on April 14, 2000.

Moore filed a claim for unemployment compensation, which was denied by the claims examiner. The form determining that Moore was ineligible for benefits was mailed to her by the claims office on May 12, 2000, and advised her as follows:

| 05/12/2000 | 05/26/2000 |
| --- | --- |
| Date of Mailing | Last Day to Protest |

### PROTEST RIGHTS

**If you disagree with this determination, you have FOURTEEN (14) DAYS from the date of mailing to file a protest. A protest must be in writing and signed by an interested party.** The protest can be filed in person or mailed to any local Job Service Office. If the protest is mailed, it must be postmarked no later than the last day to protest. **If no protest is filed, this determination will become final and cannot be changed.** (Bold in original.)

Moore protested the claims examiner's denial of benefits by letter dated May 26, 2000, addressed to the Idaho Falls Job Service office. She delivered the letter to the post office in Idaho Falls on May 26, which was the last day for Moore to file her appeal. However, the envelope containing the letter was not postmarked by the post office in Idaho Falls. Instead, it was postmarked later the next afternoon, May 27, in Pocatello, Idaho, a city some fifty miles from Idaho Falls, before it was delivered to the Idaho Falls Job Service Office, where the letter was marked as received by that office on May 30, 2000. IDAPA Rule 09.01.06.012 governing the filing of a notice of appeal with the Appeals Bureau of the Department of Labor provides that "[i]f mailed, the appeal shall be deemed to be filed on the date of mailing as determined by the postmark on the request."

The Appeals Examiner conducted a hearing on June 13, 2000. Moore testified at the hearing that she had hand delivered the notice of appeal to the United States Post Office in Idaho Falls after she had been advised by a postal employee that it would be postmarked that same day if delivered before 6:00 p.m. Moore's husband testified that he drove his wife to the post office at 5:30 p.m. on May 26, 2000. On June 16, 2000, the Appeals Examiner issued a decision holding that Moore's request for an appeal hearing was not filed within the prescribed time limit and that "claimant has not established that the post office committed any error that caused the delay in the postmark." The Appeals Examiner concluded that the claims examiner's determination of Moore's ineligibility for unemployment benefits had thus become final and could not be changed.

Moore filed a timely appeal to the Industrial Commission from the decision of the Appeals Examiner. Moore included with her notice of appeal a letter from the United States Postal Service Supervisor in Idaho Falls acknowledging that Moore had handed her letter to a postal clerk at 5:35 p.m. on May 26, 2000, well before the 6:00 p.m. deadline after which the letter would have been stamped with the date of the following day. The supervisor further stated: "The letter should have been postmarked that day. If it wasn't, it is our error."

The Commission reviewed the matter *de novo* pursuant to I.C. § 72–1368(7). *See In re Guajardo*, 119 Idaho 639, 809 P.2d 500 (1991). The Commission relied on the tape recording of the hearing before the Appeals Examiner, the exhibits presented at the hearing, and the letter from the United States Postal Service Supervisor that was included with Moore's appeal to the Commission. The Commission found that Moore presented compelling evidence that her notice of protest to the Appeals Bureau was timely mailed and that the error in the postmark was that of the U.S. Postal Service and not claimant's. The Commission thus reversed the decision of the Appeals Examiner and remanded the matter for a hearing on the merits of Moore's timely filed protest.

Following a hearing, the Appeals Examiner denied the claim for unemployment benefits finding that Moore had failed to establish good cause for quitting and failed to pursue a reasonable alternative resolution. Moore appealed that decision to the Industrial Commission. The Commission again ruled in Moore's favor, reversing the Appeals Examiner's decision. The Commission issued an order holding that Moore was eligible for unemployment benefits. Melaleuca, Inc., then brought this appeal.

## ISSUES ON APPEAL

1. Did the Commission err in reversing the finding by the Appeals Examiner that Moore's notice of protest initiating the appeal process was untimely filed?

2. Did the Commission err in finding (a) that Moore had established good cause to leave her employment with Melaleuca; and (b) that Moore had explored a viable option prior to quitting?

### *Standard of Review*

■ This Court's review of Industrial Commission decisions is limited to questions of law. Idaho Const. Art. V, § 9. Thus, the Commission's findings of fact will not be disturbed on appeal where they are supported by substantial and competent evidence. *Welch v. Cowles Publishing Co.*, 127 Idaho 361, 900 P.2d 1372 (1995).

## DISCUSSION

### I.

A. *Did the Commission err in reversing the finding by the Appeals Examiner that Moore's notice of protest initiating the appeal process was untimely filed?*

Melaleuca and the Department argue that Moore had until May 26, 2000, to file her protest to the claims examiner's decision of May 12, 2000. They rely upon the terms of IDAPA 09.01.06.012, that a protest, for the purpose of an appeal, is deemed to be filed on the date of mailing as determined by the postmark on the request. They assert that because Moore's letter filing her protest was postmarked May 27, 2000, the Appeals Examiner correctly held that the appeal was not timely. They submit that, pursuant to I.C. § 72–1368(3), the decision of the claims examiner denying Moore's eligibility for benefits became final fourteen days after notice of the decision was provided to Moore, the interested party, and the Commission lacked jurisdiction to rule contrary to that decision.

It is well settled that statutory requirements governing appeals under the Employment Security Act are mandatory and jurisdictional. *Welch v. Del Monte Corp.*, 128 Idaho 513, 515, 915 P.2d 1371, 1373 (1996), *citing Striebeck v. Employment Security Agency*, 83 Idaho 531, 366 P.2d 589 (1961). Pursuant to I.C. § 72–1368(3), a claims examiner's determination "shall become final unless, within fourteen (14) days after notice, as provided in section (5), an appeal is filed with the department." The "notice" referred to in that section is explained in I.C. § 72–1368(5): "All interested parties shall be entitled to prompt service of notice of determinations and decisions. A notice shall be deemed served if delivered to the person being served or if mailed to his last known address; service by mail shall be deemed complete on the date of mailing." The IDAPA regulations provide guidelines regarding the filing of an appeal from a claims examiner's decision. The filing may be by personal delivery, by fax or by mail which may be accomplished by sending it to any Job Service Office or to the Appeals Bureau office in Boise. As noted above, the process for filing an appeal by mail is covered by IDAPA 09.02.06.012.01: "If mailed, the appeal shall be deemed to be filed on the date of mailing as determined by the postmark on the request." Another regulation, IDAPA 09.02.06.012.02, addresses "Date of Mailing" with regard to Department determinations and decisions, and provides: "The date indicated on Department determinations, redeterminations and decisions shall be presumed to be the date the document was deposited in the United States mail, unless shown otherwise by a preponderance of competent evidence." A related regulation, IDAPA 09.02.06.017, allows a party who can establish by a preponderance of the evidence that no-

tice of a Department determination was not delivered within fourteen days of mailing because of delay or error by the U.S. Postal Service an additional fourteen days from the date of actual notice within which to file a timely appeal. Thus, it appears that the regulations, when read literally, grant more latitude with regard to delay or nondelivery in the transmittal of documents from the Department to a recipient, caused by the post office, than they do with regard to the transmittal of a notice of appeal from a claimant to the Department's Appeals Bureau.

It appears that in practice, however, this unrealistic distinction is ignored. We say this because of the language used by the Appeals Examiner in the decision holding that Moore's appeal was not timely. The Appeals Examiner wrote: "The Idaho Employment Security Law is clear that a protest must be filed within the prescribed time limits. It is unfortunate that the claimant [Moore] waited until the last day before sending her protest. *However, the claimant has not established that the post office committed any error that caused the delay in the postmark.*" (Emphasis supplied.) Thus it appears that the Appeals Examiner recognized that proof of a delay in postal service could afford relief to a claimant, just as allowed when there was a delay in mail service to a recipient with regard to written items sent by the Department through the mail. Our conclusion in this regard is bolstered by the Industrial Commission's independent decision, perhaps invited by the Appeals Examiner's observation, to allow the appeal once Moore presented proof from the post office admitting that if there was a delay in placing the postmark on the letter, it was an error of the post office.

This Court considered a similar problem in the case of *Hill v. State, Dep't of Emp.,* 116 Idaho 727, 779 P.2d 402 (1989). There in a plurality opinion the Court affirmed the Industrial Commission's decision that an appeal to the Appeals Bureau was untimely when the notice of appeal was placed in the mail in Weiser, Idaho, but postmarked several days later in Boise. It was pointed out in that case that the place where the postmark is put on an envelope by the United States Postal Service is not always at the city nor close to the time or date where a mailing may be put into a local post office's control. In a concurring opinion, Justice Huntley strongly suggested:

> The Department should change its regulations to comport with the real life situation instead of setting a trap for the unwary. That is, the regulations should require either physical filing in Boise or filing by registered mail. The date of the registration would in fact be the date of mailing.
>
> I concur in the result only because there is no adequate explanation in this case as to why, if the letter were truly mailed in Weiser on April 10th, it was not postmarked until April 23rd in Boise.

116 Idaho at 730, 779 P.2d at 405. *Dominy* differs from the present case in that there was no evidence there to explain why a delay existed in the postmarking process in the mail service. In the present case, however, there is such evidence. Moreover, it appears by the Commission's decision to allow the appeal that the Commission has changed its practices since *Dominy,* by deciding to accept compelling evidence providing the "adequate explanation" for postmarking delay alluded to by Justice Huntley.

The explanation under the facts of this case is simply that Moore delivered her letter to the Idaho Falls' post office on the due date for a timely appeal, with the expectation as represented to her by postal authorities that the letter would be seasonably postmarked. Afterwards, when the postal supervisor was informed about the question of the timeliness of Moore's mailing, he was willing to take the responsibility, stating that if an error occurred, the postal service would bear the fault for that error. These are sufficient facts, in our view, for the Commission to accept as an explanation for the delayed postmark on Moore's filing. Perhaps it would be better now for the Commission to memorialize its current practice in its published regulations, disclosing its accommodation of the postal service's custom of postmarking mail in cities and on dates different from where the mail is actually placed with

the postal service for delivery. Nonetheless, we find no error with the Commission's determination in this case to accept the explanation of the delay in postmarking, as an interpretation of its own existing regulations. *See Tomorrow's Hope v. Idaho Dep't of Health & Welfare*, 124 Idaho 843, 864 P.2d 1130 (1993); *Angstman v. City of Boise*, 128 Idaho 575, 917 P.2d 409 (Ct.App.1996). We hold that the Commission did not err in determining that Moore's notice of protest was timely filed when it was deposited in the mail with the United States Postal Service in Idaho Falls.

## II.

*B. Did the Commission err in finding that Moore had established good cause to quit her employment with Melaleuca, or that Moore had explored a viable option prior to quitting?*

■ Idaho Code § 72–1366(5) provides that a claimant is rendered ineligible for unemployment benefits if she voluntarily left her employment without good cause connected with her employment. I.C. § 72–1366(5); *Welch v. Cowles Publishing, Co., supra*, at 363, 900 P.2d at 1373. If the termination is voluntary, the burden is on the claimant to prove that it was for good cause. I.C. § 72–1366(5); *Pyeatt v. Idaho State Univ.*, 98 Idaho 424, 565 P.2d 1381 (1977). Because the question of whether an employee had "good cause" to quit is a factual one to be determined on a case-by-case basis, the determination of the Commission will be upheld if supported by substantial competent evidence. *Ullrich v. Thorpe Elec.*, 109 Idaho 820, 823, 712 P.2d 521, 524 (1985).

■ Whether an employee had "good cause" to quit is governed by the standard of reasonableness as applied to the average man or woman, and not to the supersensitive. *Hart v. Deary High School*, 126 Idaho 550, 553, 887 P.2d 1057, 1060 (1994). There must be a compulsion to quit produced by real and necessitous circumstances. *Id.* Further, an employee must explore all viable options before making the decision to quit. *Id.*

From the record, it is clear that Moore's relationship with Melaleuca, Inc., changed as soon as she informed the company of her pregnancy in the spring of 1999. Moore was told by her then supervisor that in his opinion, she should stay home to care for her child and that her husband made enough money so that she did not have to work. The supervisor also said that had she been his wife, he would have insisted that she stay home. Two weeks before Moore was to go on maternity leave, McKay Christensen, the chief operations officer of the company, met with Moore. Moore was told by Christensen that he was not happy with her performance. Christensen claimed that he was relying on information obtained from Moore's immediate supervisors, although Moore testified that her supervisors had never criticized her work in the past. Normally, Christensen only reviewed the performance of persons directly under his supervision, but for some reason, Christensen undertook a direct evaluation of Moore's performance. Moore claimed that at the meeting, Christensen asked her to justify her position, indicating that there were people waiting in line to replace her. As a result, Moore feared that she might not have a job to return to after her baby was born.

When Moore's annual performance review was due, after she returned to work, she received a two and one-half percent raise, which was allegedly based on an evaluation prepared by Nora Serrano, who had since left the company and whose evaluation was never made available to Moore nor produced for the hearing in the case. Moore's raise had been reduced by Christensen from a four percent figure recommended by Serrano, and it appeared that another recommended raise also had been blacked out and rendered illegible on the recommendation report. Although Moore did return to work, a new employee had been hired to head the product line that Moore had been heavily involved in; and Moore was told to report to this individual. Accordingly, the Commission determined that Moore correctly concluded that McKay Christensen had discriminated against her because of her pregnancy and decision not to stay home to care for her child.

■ The Commission's determination that Moore had "good cause" to leave her employ-

ment with Melaleuca, Inc., is supported by substantial, competent evidence. Likewise, the Commission's determination that Moore exercised all available options before quitting in April of 2000 is supported by substantial, competent evidence. Moore spoke with her new supervisor, advising her that she, Moore, intended to quit; and followed her supervisor's directive to speak with Melaleuca's human resources officer. After learning that any change to address her concerns would need to be approved by McKay Christensen and by the new supervisor, Moore opted to quit in favor of pursuing what appeared to be a futile course of action.

## CONCLUSION

We concur with the Commission's decision that Moore's notice of protest was a timely filed appeal to the Appeals Bureau. We also affirm the Commission's decision on the merits of Moore's claim for unemployment compensation benefits because the decision is supported by substantial evidence. No costs or fees on appeal are awarded.

Chief Justice TROUT, Justice SCHROEDER and Justices Pro Tem HORTON and JUDD, concur.