67 P.3d 1265

**Michael UHL, Claimant–Appellant,**

v.

**BALLARD MEDICAL PRODUCTS, INC., Employer, and Idaho Department of Labor, Respondents.**

No. 28286.

Supreme Court of Idaho, Boise, February 2003 Term.

April 10, 2003.

Johnson Olson, Chartered, Pocatello, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Evelyn Thomas, Deputy Attorney General, Boise, for respondent Idaho Department of Labor.

EISMANN, Justice.

This is an appeal from the Industrial Commission's ruling that the claimant-appellant Michael Uhl failed to prove good cause for voluntarily quitting his employment. We affirm the order of the Commission.

## I. FACTS AND PROCEDURAL HISTORY

From March 2, 1998, through July 1, 2001, the appellant Michael Uhl worked for Ballard Medical Products, Inc. (Ballard), assembling forceps. His work required repetitive use of his hands, and in February 2001 he began to experience pain in his hands and fingers, especially the index finger of his right hand. In March 2001, Ballard referred Mr. Uhl to a health fair, where he discussed his problem with a physician. As a result, Ballard referred him to Dr. Wathne, who began treating Mr. Uhl in mid to late June 2001. Dr. Wathne recommended surgery, but Mr. Uhl elected to first try cortisone injections. The cortisone injections only offered limited relief. Dr. Wathne told Mr. Uhl that his hands would get worse if he did not find a job that did not involve repetitive motions. Mr. Uhl did not provide Ballard with any work restrictions as a result of his medical treatment. Although Ballard was aware that he was undergoing cortisone injections, Mr. Uhl did not provide Ballard with any other medical information about his condition. At the end of June 2001, Mr. Uhl quit his employment with Ballard in order to find a job that would not cause pain in his hands. While working at Ballard, Mr. Uhl was covered by worker's compensation insurance and the Family and Medical Leave Act. He had asked a supervisor if there was another position available with Ballard that did not involve the repetitive use of his hands, and she told him that there was not.

On July 30, 2001, Mr. Uhl filed a claim for unemployment insurance benefits in which he stated that he quit in order to find more suitable employment because "the type of work I was doing was damaging my hands to a point their company doctor suggested I undergo surgery if I continued the type of work I was doing." As part of his claim, Mr. Uhl signed a medical report form, which contained both a release of medical information and questions to be answered by the treating physician. Mr. Uhl delivered that form to Dr. Wathne, who answered the questions on the form by checking boxes stating that he had not advised Mr. Uhl to take time off work, to change occupations, to change employers, or to discontinue working.

On August 24, 2001, a claims examiner with the Department of Labor interviewed Mr. Uhl by telephone. During that interview, the claims examiner read Mr. Uhl the answers given by Dr. Wathne on the medical report form. Mr. Uhl responded that Dr. Wathne never advised him to quit his job, only to do something else. Mr. Uhl also stated that he could not provide any other documentation that would support a finding that he quit his job with good cause. On the same date, the claims examiner rendered a written decision denying Mr. Uhl's claim on the ground that he had not shown good cause for quitting his employment.

On August 26, 2001, Mr. Uhl timely filed an appeal from the decision of the claims examiner. In an accompanying letter, he stated, "The medical statement, that I dropped by the doctors [sic] office, to be sent to job service did not contain the same infor-

mation that was verbally given me a month earlier."

On September 4, 2001, Dr. Wathne again saw Mr. Uhl and scheduled him for surgery, which was performed on September 17, 2001. There is nothing indicating whether the surgery was successful or Mr. Uhl's long-term prognosis. During the appeals hearing two days later, Mr. Uhl testified that he could not yet tell whether the surgery did any good.

The appeals examiner held a telephonic hearing on September 19, 2001, at which Mr. Uhl and a representative from Ballard testified. Mr. Uhl did not present any documentary evidence during the hearing. Prior to the hearing, the Department of Labor sent Mr. Uhl a list of the proposed exhibits to be admitted during the hearing. That list included the statement: "If there is anything additional, that is *factual*, and that is being relied upon by any of the parties, that document(s) should be resubmitted to all parties prior to the hearing." (Emphasis in original.) The proposed exhibits were included with the proposed exhibit list. One of the proposed exhibits was entitled "Important Information About Your Hearing." It included instructions regarding the procedures for the hearing, including calling and/or subpoenaing witnesses and presenting documentary evidence. It also included the following admonition:

### IMPORTANCE OF THE APPEALS HEARING

The Appeals Hearing **MAY** be your only chance to present witnesses and give evidence about your side of the issue. Everything that you feel should be considered needs to be presented **NOW**. Except in rare circumstances, you will not be allowed to present additional evidence upon further appeal.

The Appeals Examiner will make a **new** decision in your case. The Appeals Examiner is not required to uphold or reverse any previous decisions made in the case.

Because evidence and testimony in the Appeals hearing is taken under oath, statements, documents or other evidence used in making previous decisions in the case may not be given the same weight as before. (Emphasis in original.)

On September 24, 2001, the appeals examiner issued a written decision denying Mr. Uhl's appeal. The appeals examiner concluded:

The claimant quit his job because of problems he was experiencing with his hands. The medical documentation provided does not support the claimant's position that he was advised by Dr. Wathne to change employers. The claimant had an obligation to work with the employer and provide appropriate medical documentation with respect to his injury and whether he would be able to continue working for the employer.

The claimant has not established that he quit his job with good cause in connection with employment. Therefore the claimant is ineligible for unemployment insurance benefits, and the employer's experience rated account is not chargeable on the claim.

Mr. Uhl then timely appealed to the Industrial Commission.

The Industrial Commission did not hold a hearing to receive additional evidence. It reviewed the matter *de novo* based upon the record. In connection with his appeal to the Commission, Mr. Uhl provided a letter dated September 27, 2001, from Dr. Wathne in which he stated that when completing the medical report form he had inadvertently checked "no" to the question of whether he had advised Mr. Uhl to change occupations. The Commission considered Mr. Uhl's submission of the letter as a request for a new hearing. Because such evidence was available at the time of the hearing before the appeals examiner, the Commission denied the request that it admit Mr. Wathne's letter into evidence. On November 9, 2001, the Commission issued its decision affirming the decision of the appeals examiner. Mr. Uhl timely requested that the Commission reconsider its decision, and on January 15, 2002, the Commission entered an order denying such request. Mr. Uhl then timely appealed to this Court.

## II.  ISSUES ON APPEAL

A.  Did the Industrial Commission abuse its discretion in denying Mr. Uhl's request to submit additional evidence on appeal?

B.  Is there substantial and competent evidence supporting the decision of the Industrial Commission?

C.  Did the Industrial Commission err in failing to grant Mr. Uhl unemployment insurance benefits pursuant to Idaho Code § 72–1366(4)?

D.  Does Idaho Code § 72–1368(4) require that Mr. Uhl be granted a new hearing?

E.  Is Mr. Uhl entitled to an award of attorney fees on appeal?

### III.  ANALYSIS

■■■■  When this Court reviews a decision from the Industrial Commission, we exercise free review over questions of law, but review questions of fact only to determine whether the Commission's findings are supported by substantial and competent evidence.  *Hughen v. Highland Estates*, 137 Idaho 349, 48 P.3d 1238 (2002).  Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion.  *Id.* We will not disturb the Industrial Commission's conclusions regarding the credibility and weight of evidence unless the conclusions are clearly erroneous.  *Id.* We do not re-weigh the evidence or consider whether we would have reached a different conclusion from the evidence presented.  *Id.*

A.  **Did the Industrial Commission Abuse its Discretion in Denying Mr. Uhl's Request to Submit Additional Evidence on Appeal?**

■■■■  Pursuant to Idaho Code § 72–1368(7), the record before the Commission consists of the record before the appeals examiner unless the Commission, in its sole discretion, decides that the interests of justice require that the interested parties be permitted to present additional evidence. The Commission's decision on whether to consider additional evidence will not be overturned unless it abused its discretion. *Quinn v. J.R. Simplot Co.*, 131 Idaho 318,

955 P.2d 1097 (1998).  Rule 6(B) of the Rules of Appellate Practice and Procedure adopted by the Commission provides the procedure for requesting a hearing to present additional evidence.  It provides:

FORM OF HEARING REQUEST— The party or parties requesting a hearing shall submit the following information with the request for hearing:

1.  the reason for requesting the hearing;

2.  whether the party desires to present evidence to the Industrial Commission in addition to that presented to the appeals examiner;

3.  a description of the evidence the party desires to present;

4.  an explanation of why the proposed evidence is relevant to the issues before the Industrial Commission;  and

5.  reason why the proposed evidence was not presented before the examiner.

When denying the request for a hearing in this case, the Commission focused upon subsection 5—"the reason why the proposed evidence was not presented before the examiner."

The decision of the claims examiner issued on August 24, 2001, stated, as a factual basis for the denial of benefits, the following: "The claimant quit his job because he did not fell [sic] he could physically perform the duties of the job" and "The claimant provided a medical statement, which did not support his position."  The Commission noted that by August 26, 2001, when he filed the notice of appeal from the decision of the claims examiner, Mr. Uhl knew that he needed additional information from Dr. Wathne in order to support his claim.  It also noted that Dr. Wathne performed surgery upon Mr. Uhl's hand two days prior to the hearing before the appeals examiner.  Thus, Mr. Uhl was still in contact with Dr. Wathne.  The Commission concluded that Mr. Uhl "had adequate time and access to Dr. Wathne to obtain the necessary information regarding a change in employment prior to the Appeals Examiner's hearing.  Claimant fails to explain to the Commission why he did not provide this evidence while the record was

open." Therefore, the Commission denied Mr. Uhl's request for a hearing to supplement the record. The Commission did not abuse its discretion in doing so.

### B. Is There Substantial and Competent Evidence Supporting the Decision of the Industrial Commission?

■ An employee who "left his employment voluntarily without good cause connected with his employment" is not eligible for unemployment benefits. IDAHO CODE § 72–1366(5) (Supp.2002). Mr. Uhl alleges that as a matter of law he had good cause to quit his employment because he was unable to work due to the pain in his hands.

■ Whether or not good cause existed to quit employment is a question of fact. *Teevan v. Office of the Attorney General,* 130 Idaho 79, 936 P.2d 1321 (1997). Quitting work that is not suitable is always good cause. The degree of risk to an individual's health is a factor to be considered in determining whether or not work is suitable for an individual. *Clay v. BMC West Truss Plant,* 127 Idaho 501, 903 P.2d 90 (1995); IDAHO CODE § 72–1366(7) (Supp.2002). Because Mr. Uhl voluntarily quit his employment with Ballard, he had the burden of proving that good cause existed for him to do so. *Moore v. Melaleuca, Inc.,* 137 Idaho 23, 43 P.3d 782 (2002). The Commission concluded that Mr. Uhl had failed to prove that he had good cause to quit his employment because he "failed to provide Employer or the Idaho Department of Labor with sufficient medical evidence exhibiting the degree of risk to Claimant's health or physical condition while the record remained open." The Commission's decision is supported by substantial and competent evidence.

■ Mr. Uhl also argues on appeal that the Industrial Commission abused its discretion in denying his motion to reconsider its order denying benefits. The motion for reconsideration did not raise any additional issues. Therefore, the Commission did not abuse its discretion in failing to grant the motion.

### C. Did the Industrial Commission Err in Failing to Grant Mr. Uhl Unemployment Insurance Benefits Pursuant to Idaho Code § 72–1366(4)?

■ Mr. Uhl contends that the appeals examiner and the Industrial Commission failed to consider Idaho Code § 72–1366(4) (Supp.2002) when reaching their decisions. That statute provides:

**Personal eligibility conditions.**—The personal eligibility conditions of a benefit claimant are that:

. . . .

(4) During the whole of any week with respect to which he claims benefits or credit to his waiting period, the claimant was able to work, available for suitable work, and seeking work; provided, however, that no claimant shall be considered ineligible for failure to comply with the provisions of this subsection if: (i) such failure is due to an illness or disability which occurs after he has filed a claim and during such illness or disability, the claimant does not refuse or miss suitable work that would have provided wages greater than one-half (1/2) of the claimant's weekly benefit amount; or (ii) the claimant, because of compelling personal circumstance, is required to be absent from his normal labor market area, provided that such absence does not exceed a minor portion of the workweek.

Mr. Uhl relies upon that portion of the statute which states: "[P]rovided, however, that no claimant shall be considered ineligible for failure to comply with the provisions of this subsection if: (i) such failure is due to an illness or disability which occurs after he has filed a claim and during such illness or disability, the claimant does not refuse or miss suitable work."

Idaho Code § 72–1366(4) has no application to this case. Mr. Uhl was not considered ineligible for benefits because, during the whole of any week with respect to which he claimed benefits, he was unable to work, unavailable for suitable work, and not seeking work. His claim for benefits was denied because he failed to prove that he had good cause for voluntarily quitting his employment. Therefore, the Commission did not

err in failing to consider Idaho Code § .72–1366(4).

### D. Does Idaho Code § 72–1368(4) Require that Mr. Uhl Be Granted a New Hearing?

 Mr. Uhl contends that he is entitled to a new hearing under Idaho Code § 72–1368(4), which provides as follows:

(4) The director may make a special redetermination whenever he finds that a departmental error has occurred in connection with a determination, or that additional wages of the claimant or other facts pertinent to such determination have become available or have been newly discovered, or that benefits have been allowed or denied or the amount of benefits fixed on the basis of nondisclosure or misrepresentation of fact. The special redetermination must be made within one (1) year from the date of the original determination, except that a special redetermination involving a finding that benefits have been allowed or denied or the amount of benefits fixed on the basis of nondisclosures or misrepresentations of fact may be made within two (2) years from the date of the original determination. Subject to the same limitations and for the same reasons, the director may make a special redetermination in any case in which the final decision has been rendered by an appeals examiner, the commission, or a court and may apply to the appeal tribunal which rendered such final decision to issue a revised decision. In the event that an appeal involving an original determination is pending as of the date a special redetermination is issued, the appeal, unless withdrawn, shall be treated as an appeal from the special redetermination.

Mr. Uhl contends that we should remand this case for a new hearing pursuant to Idaho Code § 72–1368(4). That statute permits the Director of the Department of Labor to make a special redetermination of the denial of benefits within one year of the original determination. Even assuming that we could review the Director's denial of a request for such a redetermination, there is nothing in

the record showing that any such request was made in this case.

### E. Is Mr. Uhl Entitled to an Award of Attorney Fees on Appeal?

 Mr. Uhl requests an award of attorney fees on appeal pursuant to the equitable powers of this Court, the private attorney general doctrine, or Idaho Code § 12–117. Because he did not prevail on this appeal, Mr. Uhl is not entitled to an award of attorney fees. *Thomson v. City of Lewiston*, 137 Idaho 473, 50 P.3d 488 (2002).

## IV. CONCLUSION

The order of the Industrial Commission is affirmed. Costs on appeal are awarded to the Department of Labor.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS, and KIDWELL concur.