88 P.3d 758

**Jeri R. WHITE, Claimant,**

v.

**CANYON HIGHWAY DISTRICT # 4, Employer–Appellant,**

and

**Idaho Department of Labor, Respondent.**

No. 29466.

Supreme Court of Idaho, Boise, January 2004 Term.

March 30, 2004.

White, Peterson, Morrow, Gigray, Rossman, Nye & Rossman, P.A., Nampa, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.

KIDWELL, Justice.

This case involves unemployment benefits and quitting for good cause. Canyon Highway District # 4 (Canyon) appeals from the Industrial Commission's (Commission) grant of unemployment benefits to Jeri White (White) after the Commission reversed the ruling of the Appeals Bureau. The Commission concluded White quit for good cause and was entitled to unemployment benefits. The decision of the Industrial Commission is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 2000, Jeri White (White) started working for Canyon Highway Dis-

trict # 4 (Canyon) as an assistant clerk. At that time, Sid Bright (Bright), Canyon's work director, was White's supervisor.

In January 2001, Bright assigned White to serve as the secretary for the Utility Coordinating Committee (UCC). The UCC coordinates the use of highway rights-of-way by various utilities for cable. White understood that she could resign this assignment after a year. White was responsible for preparing the minutes of the UCC meetings, but Bright would make changes to those minutes before they went back to the UCC for approval. Bright gave White instructions that contradicted those given to White by the president of the UCC. When White told Bright in January 2002 that she no longer wanted to serve as the UCC secretary, he told her that she could not quit.

In early 2002, Bright instructed the crewmembers to stay away from the women working in the office to avoid any allegations of sexual harassment. One of the members of the crew was a friend of White's and Bright reprimanded the crewmember for his conduct towards White in the office. Bright did not discuss the matter with White directly. White maintains that Bright's directives unnecessarily alienated the crew from the office staff.

In late February 2002, White tendered a letter of complaint to Ralph Little (Little), the chairman of the three-member commission, regarding Mr. Bright's behavior. White cited Mr. Bright's treatment of the crewmember, Bright's failure to allow White to quit her assignment with the UCC, and instances of sexual misconduct towards White by Bright. White testified that she was told by Little to develop a thick skin and withdraw her complaint. Little determined that White's assignment to the UCC was proper and that Bright was within his discretion to deal with White's friend in the manner he thought best for the office. No one addressed White's allegations of sexual harassment.

White did not pursue the matters in her complaint letter further. In April 2002, White told the members of the UCC that she would no longer be serving as the secretary. White did not discuss this decision with

Bright. Instead, he found out about her decision to quit from other people.

Other employees of Canyon also filed grievances against Bright. White testified that she believed because she made it known that she agreed with the people who had filed grievances, Bright displayed his anger towards her. For example, Bright would make appointments with contractors without telling the clerical staff; he would then not show up for the appointments, and later blame the confusion on the failure of the secretarial staff to keep him informed. White and Janet Lantz, Canyon's clerk, testified that Bright created a harassing and stressful work environment. Casey Bequeath (Bequeath), the assistant work director, testified that he knew several members of the staff had problems working with Bright.

On the afternoon of August 26, 2002, Bright called White into a conference room and began closing the door. White explained that Bright routinely called his subordinates into the conference room for extended discussions about attitude, during which time he "chewed" on people. White told Bright that if he was going to meet with her with the doors closed, she wanted someone else present. Bright called Bequeath into the room. Bright proceeded to ask White why she had resigned from the UCC without discussing it with him. White and Bright disagreed over whether White was required to discuss that decision with Bright. The conversation progressed to Bright's criticism of White's attitude. White testified that this was the first time Bright had taken issue with her attitude. However, because White felt there was nothing wrong with her attitude, the discussion escalated. White stormed out of the room and left the premises, indicating that she did not need the job.

On the following day, White called Little to inquire about filing a grievance. Little explained that the grievance remedy is only available to employees, and because White had quit, she was not technically eligible to have her grievance considered. Little told White to put her complaint in writing, and stated that the complaint would have to be good because she would have to convince

three men that they should bend Canyon's personnel policies to consider it. White interpreted Little's statement as discouraging her from taking any action.

On September 17, 2002, White filed a claim for unemployment insurance benefits with the Idaho Department of Labor. The Department subsequently denied White's claim on October 8, 2002. White then filed a Request For Appeals Hearing, seeking a review by an Appeals Examiner of the Idaho Department Of Labor's denial of her application for unemployment insurance benefits. On November 20, 2002, the Appeals Bureau of the Idaho Department Of Labor held a telephone hearing to review the Department of Labor's denial of White's application for unemployment insurance benefits. The Appeals Examiner affirmed the Idaho Department of Labor's October 8, 2002, denial of benefits to White. On December 3, 2002, White appealed the decision of the Appeals Examiner to the Industrial Commission.

On January 14, 2003, the Industrial Commission entered an Order reversing the Decision of the Appeals Examiner. The Commission concluded White quit her employment with Canyon, but that she quit with good cause because there were no alternatives to pursue short of quitting that would have provided her with relief from the hostile working environment created by Bright.

On January 29, 2003, Canyon filed a Motion for Reconsideration requesting the Commission reconsider its Order of January 14, 2003. In response to this motion, White filed her own motion with the Commission asking them to deny Canyon's Motion for Reconsideration. On February 10, 2003, the Commission entered a final Order denying Canyon's Motion for Reconsideration. On March 20, 2003, Canyon filed its Notice of Appeal to this Court. Canyon seeks a review of the Commission's decision.

## II.

## STANDARD OF REVIEW

■ When reviewing decisions of the Industrial Commission, this Court exercises free review over questions of law, but reviews questions of fact only to determine whether the Commission's findings are supported by substantial and competent evidence. *Uhl v. Ballard Med. Products, Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003). Factual findings of the Industrial Commission that are supported by substantial and competent evidence will not be disturbed by this Court. *Ewins v. Allied Security*, 138 Idaho 343, 346, 63 P.3d 469, 472 (2003). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Uhl*, 138 Idaho at 657, 67 P.3d at 1269.

## III.

## ANALYSIS

**There Is Substantial And Competent Evidence In The Record To Support The Industrial Commission's Findings That White Quit Her Job With Canyon Highway District # 4 For Good Cause.**

■ Contrary to Canyon's assertion, the record shows the Commission's conclusion that White quit for "good cause" is supported by substantial and competent evidence. Section 72–1366(5) of the Idaho Code provides that a claimant is rendered ineligible for unemployment benefits if he/she voluntarily left his/her employment without good cause connected with his/her employment. I.C. § 72–1366(5); *Moore v. Melaleuca, Inc.*, 137 Idaho 23, 28, 43 P.3d 782, 787 (2002).

In *Ewins v. Allied Security*, 138 Idaho 343, 63 P.3d 469 (2003), this Court defined "good cause" as follows:

In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive.

*Ewins*, 138 Idaho at 347–48, 63 P.3d at 473–74 (quoting *Burroughs v. Employment Security Agency*, 86 Idaho 412, 414, 387 P.2d 473, 474 (1963)).

█ Whether White voluntarily quit her job for "good cause" in connection with her employment is a question of fact to be determined by the Industrial Commission. *Ewins*, 138 Idaho at 347, 63 P.3d at 473. Because White voluntarily quit her employment with Canyon, the burden is on White to prove that it was for good cause. I.C. § 72–1366(5); *Moore*, 137 Idaho at 28, 43 P.3d at 787. Since the question of whether White had "good cause" to quit is a factual one to be determined on a case-by-case basis, the determination of the Commission will be upheld if supported by substantial competent evidence. *Ewins*, 138 Idaho at 347, 63 P.3d at 473; *Moore*, 137 Idaho at 28, 43 P.3d at 787.

Canyon maintains there is not substantial and competent evidence to support the Commission's finding that White quit for "good cause." They base this assertion on two areas: first, there is no evidence to support the Commission's determination that Bright sexually harassed White; and second, there is insufficient evidence in the record to support a finding of good cause based on any other conduct by Bright.

First, "sexual harassment" is defined as "unwelcome sexual advances ... or other verbal or physical conduct of a sexual nature ... [that has] the effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." IDAPA 09.01.30.625. That section of the IDAPA applies specifically to I.C. § 72–1366(5), which addresses situations where a person claims they left their employment voluntarily and for good cause.

The record shows White testified that Bright "seems to have a little bit of a problem with sexual harassment. He likes to make comments that are inappropriate and at times are very inappropriate." The record also shows Bright, "at one time, made a comment to [White] in the car about sex curing [her] headache." This comment is corroborated by a letter submitted to the Highway Commissioners by White in February 2002, which outlined grievances White had with Bright, and was admitted as an exhibit before the Appeals Bureau during their hearing. Additionally, the record shows Bright made an inappropriate sexual innuendo when Jan Lantz (Lantz), a co-worker of Whites, received flowers from her husband on Valentine's Day. Bright, upon walking into the office and seeing the flowers, commented to Lantz, "Oh, my, you must have been good last night." Moreover, as the Industrial Commission noted, a review of Bright's testimony in front of the Appeals Bureau shows that Bright never denied suggesting to White that sex would cure her headache, or the sexually suggestive remark to Lantz when she received roses from her husband on Valentine's Day. Further, as the Commission noted, there is no evidence in the record to show that Little or any other member of the Board investigated White's allegations of sexual harassment when she raised them in her letter dated February 26, 2002.

Bright's unwelcome sexual comments provide substantial and competent evidence for the Commission's conclusion that Bright's behavior had the effect of creating an intimidating, hostile, and offensive working environment. Therefore, there is substantial and competent evidence to support the Commission's conclusion.

Second, the record shows Bright engaged in other conduct that created the kind of working environment that would compel a reasonable person to quit. As the following testimony of Lantz—White's co-worker—shows, Bright created a hostile work environment:

Q: Did you ever feel harassed by Sid [Bright]?

A: Yes, I have. In several instances.

Q: Did you ever feel that the work environment in the office was unbearably stressful?

A: Yes, I have.

White also testified that Bright treated the office like it was:

"his kingdom and, you know, I was one of the little servants that wasn't following his rules or something and I just—I couldn't do it anymore. It was so stressful I could hardly even go to work. It was difficult everyday to go, because I knew as soon as

I was there something was going to happen, I was going to get blamed for something, Sid [Bright] was going to say one thing one day and, then, the next day he would have a different opinion on the matter and I mean that happened all the time. All the time."

The testimony of Casey Bequeath, the assistant work director, also corroborates the Commission's findings that Bright created a hostile work environment. On cross-examination by White the following testimony was elicited:

Q: Were you aware that I had been having problems with Sid and his actions were upsetting to me?

A: Well, there has been quite a few people that's been going on around here with that, Jeri.

Additionally, Bequeath testified on cross-examination by White to the following:

Q: Would you say that Sid harassed people around the office, in your opinion?

A: Well, I have seen things happen here since I have been up in the job, but as any physical stuff that he's done, I have never seen any of that or really getting after people. I hear that after the fact.

As the above testimony shows, it is reasonable to conclude Bright's actions around the office created the kind of working environment that would compel a reasonable person to quit. Bright's behavior could have unreasonably interfered with White's ability to perform her job duties by creating an environment that was hostile and offensive. Therefore, there is substantial and competent evidence in the record to support the Industrial Commission's conclusion that White did quit for good cause.

■ Canyon also argues White failed to seek reasonable alternatives to quitting prior to leaving her job. Under Idaho law, White must have explored "all viable options before making the decision to quit." *Moore*, 137 Idaho at 28, 43 P.3d at 787. In this case, the record shows that White explored all viable options before making the decision to quit.

As the following testimony of White shows, she called Little's attention to her concerns about Bright's behavior and neither he nor any other member of the Board took any action:

Q: You have gone over a lot of examples today of things that you felt constituted harassment on the part of Mr. Bright. Was there one thing that was more paramount than the others that you felt—that caused you to quit your job?

A: You know, I just—it seems—it seems to me it was just—it was a lot of things and I did try to file a grievance back in February when-because a lot of things, you know, started—it started getting really bad in January and I did try to file a grievance with Ralph [Little] in February and he told me that I needed to get thicker skinned. He told me that I needed to forget it and it would—he highly recommended that I drop it and that it would probably be more beneficial to me to forget about it. And, you know, it was a threat. I took it as a threat.

Q: So, why didn't you follow—why didn't you file a grievance again—

A: In August?

Q: —end your employment? Yes.

A: Because when I called Ralph to talk to him about it that morning, he was he sounded really put out, kind of irritated with me that I had called and, then, after he finished telling me that—he—said his exact words were: yes, you may go ahead and file a grievance, but you had better make it good, because you need to convince three men that Sid [Bright] did wrong. Those were his exact words to me. And now I knew—because there had been four other employees that had filed grievances back in March and they had nothing but run around, the constant—oh, I'm sorry, you didn't dot this I and cross this T, you need to start over. It went on for months. And Sid treated everybody terrible. And I think that right there is why Sid is so angry with me, because he knew that I believed what

they were saying, because they were accurate in what they were saying and four men had lost against Sid and I just did not feel like I had a single chance and I knew that they would drag it out probably until next spring.

Q: What was—what was your understanding of who the people were that would hear a grievance?

A: The Commissioners. The three Commissioners.

Q: You said four men?

A: Three men. There were four gentlemen that filed grievances.

Q: Okay. And what is there—are you aware of a further level of the grievance procedure if you're not satisfied with what the three Commissioners decide?

A: No.

Q: Can you go to a higher level?

A: No, I don't think so. I'm pretty sure that their decision is final.

Based on White's testimony, this Court finds that White explored all reasonable alternatives short of quitting that would have provided her with relief from the hostile work environment created by Bright. As such, the Commission's decision that White quit for good cause is supported by substantial and competent evidence.

## IV.

### CONCLUSION

The decision of the Industrial Commission that White quit for good cause in connection with her employment with Canyon Highway District # 4 is affirmed. There is substantial and competent evidence to support the Commission's finding that the sexual nature of Bright's conduct created an unacceptable working condition. There is also substantial and competent evidence supporting the Commission's finding that Bright engaged in other behavior that created a hostile work environment. Finally, there is substantial and competent evidence supporting the Commission's finding that White pursued all available options before quitting.

Chief Justice TROUT and Justices SCHROEDER, EISMANN, and BURDICK concur.