# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47061

| | | |
|---|---|---|
| CHRISTINE L. NELSON, | ) | |
| | ) | |
| Claimant-Appellant, | ) | Boise, April 2020 Term |
| | ) | |
| v. | ) | Opinion filed: April 30, 2020 |
| | ) | |
| THE FRANKLIN GROUP, INC., Employer; | ) | Karel A. Lehrman, Clerk |
| and IDAHO DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Respondents. | ) | |

Appeal from the Idaho Industrial Commission.

The decision of the Industrial Commission is <u>reversed and remanded</u>.

Christine L. Nelson, Pocatello, Appellant *pro se*.

Lawrence G. Wasden, Idaho Attorney General; Scott Keim, Deputy Attorney General, Boise, for Respondents.

_____

MOELLER, Justice.

This is an appeal from a self-represented litigant concerning the denial of unemployment benefits by the Idaho Department of Labor. The appeals examiner concluded that Nelson's letter of protest was untimely because the date of the postmark on her letter was illegible, thereby rendering the filing date indeterminable. The Idaho Industrial Commission affirmed. For the following reasons, we reverse the decision of the Industrial Commission and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After Christine Nelson quit her job at Franklin Building Supply in Pocatello, Idaho, due to what she described as a hostile and demeaning work environment, she filed for unemployment benefits with the Department of Labor. The Department denied Nelson's request for benefits, concluding that she quit her job without good cause because "reasonable alternatives were not

exhausted prior to quitting." The Department also informed Nelson that if she disagreed with the determination, she could fax, hand deliver, or mail a protest within 14 days. The notice sent by the Department designated March 6, 2019 as the "last day to protest." For protests[1] sent by U.S. mail, the notice stated that the letter had to be postmarked no later than March 6, 2019.

Nelson mailed her protest via the U.S. Postal Service ("USPS") from Pocatello, Idaho. Her letter arrived at the Department's offices in Boise on March 7, one day past the deadline. Because the postmark did not indicate the date of mailing, Nelson's protest was dismissed by the Department for being untimely. In support of her claim that she mailed the letter before March 7, as required, Nelson presented a receipt for a book of stamps purchased from the post office on March 1, 2019. Nelson claims that her husband took the letter to the post office on that day "because he had to buy stamps in order to mail the letter." While at the post office, Nelson claims her husband put two stamps on the envelope to ensure "there would be enough postage" and then gave the envelope to a postal worker.

On March 28, the appeals examiner held a hearing on the matter. At the hearing, Nelson explained that she mailed her protest near the date she wrote it—February 26, 2019—and that the mail sometimes runs late because it has to go through distribution in Salt Lake City. Nelson also stated she did not know why the date was missing from the USPS postmark.

> Q: But you indicated you composed the document and, then, your husband is the one who mailed it?
>
> A. Yeah. And he mailed it that day. We made sure that we mailed it within the — the time frame, so that it would get to you and it stated on the -- on the -- I then on the -- if we contested it, as long as it had post date, which I'm really surprised that it doesn't show a post date. It's got something at the bottom, which I think is part of the post office, but there is no post date. So, I don't know. But he did mail it and we mailed it within the time frame and, like I said, it goes down -- the distribution center now is down in Salt Lake City, so it goes from Pocatello down to Salt Lake City and, then, they do whatever and, then, they mail it to Boise or mail it out to wherever it goes.
>
> Q. Do you have any further testimony in regards to the timeliness of your appeal?

---

[1] While the IDAPA guidelines cited by the the Appeals Examiner and the Industrial Commission designate this initial response to a denial of benefits as an "appeal," the Department's letter to Nelson repeatedly refers to it as a "protest," notwithstanding that it was to be mailed to the *Appeals* Bureau of the Department. *See* IDAPA 09.01.06.012.01 and .03 (March 11, 2015). *See also* I.C. § 72-1368(3)(c). To avoid confusion, this Opinion will refer to Nelson's initial objection to the Department's determination as a protest and her subsequent objections to the appeal examiner's and the Commission's decisions as an appeal.

A. I don't. I mean I don't know what else to say, other than I do know that we mailed it and I would say by the post date – or the – the appeals date that's on the – on the letter.

During the rest of the hearing, the appeals examiner asked Nelson questions concerning her prior employment and the circumstances of her resignation.

After the hearing, the appeals examiner concluded that although there was a USPS postmark stamped on the envelope, the red ink "blend[ed] with the red stamps," obscuring the date. Thus, while Salt Lake City—the distribution center—could be discerned from the postmark, "the remainder of the postmark [was] illegible." Because the envelope lacked a date on the postmark, the appeals examiner concluded that the envelope should be treated as if it had no postmark at all, thereby making the date of filing the date received, which was March 7, 2019—one day too late.

Nelson timely appealed the decision of the appeals examiner to the Industrial Commission, arguing that the letter was mailed by March 1 and that she had no control over its late arrival or the absence of a legible postmark. After reviewing the evidence, the Industrial Commission affirmed the determination of the appeal's examiner that the protest was untimely. As the Commission explained:

> There is no reason to doubt Claimant's account that her husband placed the letter in a post office box prior to the protest deadline. Unfortunately, the postmark in this case is illegible, and as such, there is no way to determine on which date [the] U.S. Postal Service took possession of the letter or to establish the date of mailing as the filed date. Therefore, the Commission has no alternative but to establish the date the envelope was delivered to the Appeals Bureau as the filing date.

Nelson timely appealed.

## II. STANDARD OF REVIEW

When reviewing decisions from the Industrial Commission, we freely review questions of law. *Smith v. Idaho Dep't of Labor*, 148 Idaho 72, 73, 218 P.3d 1133, 1134 (2009). This Court will not disturb findings of fact that are supported by substantial and competent evidence, which "is relevant evidence which a reasonable mind might accept to support a conclusion." *Desilet v. Glass Doctor*, 142 Idaho 655, 657, 132 P.3d 412, 414 (2006).

## III. ANALYSIS

Nelson's first issue raised on appeal concerns the Department's original eligibility determination, which concluded that she lacked good cause to leave her employment. However,

neither the Department of Labor nor the Industrial Commission considered this issue, instead focusing entirely on the issue of timeliness. Because our review is "limited to the evidence, theories and arguments that were presented . . . below," this Court cannot consider a new issue for the first time on appeal. *Obenchain v. McAlvain Const., Inc.*, 143 Idaho 56, 57, 137 P.3d 443, 444 (2006). Thus, the single inquiry before us is whether Nelson's protest to the Department's eligibility determination was untimely. Nelson argues that her March 1 receipt for stamps and the simple fact that the letter arrived on March 7 proves that she mailed her protest on or before the filing deadline of March 6, 2019. The Department contends that Nelson failed to meet her burden of proof that there was a postal-service error. We disagree.

The "statutory requirements governing the right of appeal under the Employment Security Law are mandatory and jurisdictional." *In re Dominy*, 116 Idaho 727, 729, 779 P.2d 402, 404 (1989). Idaho Code section 72-1368(3)(c) provides that a determination by the Department becomes "final unless, within fourteen (14) days after notice, as provided in subsection (5) of this section, an appeal is filed by an interested party with the department." The Idaho Administrative Code then in effect provided:

> If mailed, the appeal shall be deemed to be filed on the date of mailing as determined by the postmark on the envelope containing the appeal, unless a party establishes by a preponderance of the evidence that but for error by the U.S. Postal Service, the envelope would have been postmarked within the period for timely appeal. If such a postal error is established, the appeal shall be deemed to be timely filed.

IDAPA 09.01.06.012.01 (March 11, 2015). The USPS describes a "postmark" as "an official Postal Service™ imprint," which "indicates the location and date the Postal Service accepted custody of a mailpiece." United States Postal Service Handbook, 1-1.3, https://about.usps.com/handbooks/po408/ch1_003.htm (last visited April 22, 2020).

This Court has repeatedly held that the postmark date is the date of filing an appeal. *See e.g. Smith v. Idaho Dep't of Labor*, 148 Idaho 72, 75, 218 P.3d 1133, 1136 (2009). Where the letter lacks a USPS postmark, the appellant bears the burden of providing evidence that USPS took custody of the letter on a particular day. *Id.* at 76, 218 P.3d 1133, 1137 (2009). For example, in *Smith*, the notice mailed by the appellant lacked a postmark and arrived at the Industrial Commission nearly two weeks past the filing deadline. *Id.* at 73, 218 P.3d at 1134. The only evidence the appellant provided of a timely filing was a dated meter-mark on the envelope and an affidavit from his office manager that the metered mailing date was accurate. *Id.* at 73,

4

218 P.3d at 1134. That evidence was held to be insufficient and an unreliable means of determining when the notice was filed. *Id.* Thus, the Court upheld the Commission's ruling that Smith's appeal was untimely. *Id.*

In contrast to *Smith*, in *Moore v. Melaleuca, Inc.*, the appellant dated her letter and delivered it to the post office on May 26, the last day for her to file the appeal. 137 Idaho 23, 25, 43 P.3d 782, 784 (2002). Despite the appellant's timeliness, the letter was not postmarked until the following day in another city. *Id.* The appeals examiner in that case found the filing untimely, but his decision was reversed by the Industrial Commission. *Id.* The Commission found the appeal timely after reviewing a letter from the USPS worker claiming fault for the delayed postmark. *Id.* This Court ultimately concluded that those facts were sufficient for the Commission to accept the appellant's explanation for the delayed postmark. *Id.* at 27–28, 43 P.3d at 786–87. The distinguishing factor in *Moore* was the appellant's presentation of evidence to explain why an error existed in the postmarking process after it entered USPS custody. *Id.* at 27, 43 P.3d at 786.

Here, Nelson presented evidence that her husband purchased stamps on March 1. We find such evidence to be inconclusive and taken alone, inadequate to carry her burden of proof for the reasons we explained in *Smith*. However, Nelson argues persuasively that it was impossible for her letter to have arrived at the Department of Labor on March 7 unless it had been mailed on or before March 6, regardless of the lack of a date on the postmark. The record is clear that the letter would have had to travel from the Pocatello post office, to the Salt Lake City mail distribution center, and then to the Boise post office, before it was ultimately delivered to the Department's Appeals Bureau. This fact was reiterated in Nelson's briefing, early testimony, and can be inferred from the appeals examiner's own finding that the only legible information on the postmark were the words "Salt Lake City." Thus, the record clearly establishes that the letter could not have been mailed and delivered within the same day. Additionally, since once a letter is deposited for mailing it is entirely within the control of the USPS, the obscured date on the postmark stamp could only have been a result of USPS error. Thus, by the application of reason and common sense, the delivery of this letter on March 7—even with an illegible date on the postmark—conclusively proves that Nelson must have deposited her appeals letter into USPS custody on or before the March 6 filing deadline. In fact, the Commission itself acknowledged

that "[t]here is no reason to doubt Claimant's account that her husband placed the letter in a post office box prior to the protest deadline."

While appeals examiners and commissioners, like judges, swear an oath to remain faithful to the law, this does not mean they have divorced themselves from common sense in applying it. Applying the provisions of Idaho's administrative code, along with what we know of the laws of time, space, and logic to the undisputed evidence in the record, supports only one conclusion: the letter must have been deposited into USPS custody on or before March 6. Taken as a whole, the evidence of (1) the postmark's presence on the envelope, (2) the USPS's error in legibly affixing the postmark, and (3) the letter's arrival in Boise on March 7, were the type of substantial and competent evidence that "a reasonable mind might accept" to support the conclusion that the letter was timely filed. *Desilet,* 142 Idaho at 657, 132 P.3d at 414. Although this Court continues to recognize the importance of strict adherence to filing deadlines, the conclusions of the appeals examiner, as affirmed by the Industrial Commission, were a divergence from common sense and the substantial and competent evidence in the record. The law is not blind to common sense, nor should it be. Indeed, as the U.S. Supreme Court has wryly observed, "common sense often makes good law." *Peak v. United States*, 353 U.S. 43, 46 (1957).

## IV. CONCLUSION

For the foregoing reasons, we reverse and remand this matter for consideration of Nelson's protest to the denial of benefits on the merits. Costs are awarded to Nelson pursuant to Idaho Appellate Rule 40.

Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**

6