86 P.3d 490

**Harold RUDOLPH, Claimant–Appellant,**

v.

**SPUDNIK EQUIPMENT, Employer, and Insurance Company of the West, Surety, Defendants–Respondents.**

No. 29266.

Supreme Court of Idaho,
Boise, January 2004 Term.

Feb. 27, 2004.

Harold Rudolph pro se appellant.

Penland, Munther & Goodrum, Chtd., Boise, for respondent. Thomas V. Munson argued.

SCHROEDER, Justice.

Harold Rudolph was injured on the job on January 27, 2000. He received a course of treatment following that injury through October 2000. Thereafter he sought additional medical and other workers' compensation benefits. The Idaho Industrial Commission determined he had not met his burden of proving his current complaints and recommended surgeries were related to the industrial accident. Mr. Rudolph appeals.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Rudolph is a welder. On January 27, 2000, he suffered a left shoulder/arm strain while lifting a conveyor piece from a jig. He saw an orthopedic surgeon, Dr. Robert J. Lee, on February 16, 2000, who diagnosed a diffuse muscle strain to the left upper extremity and recommended conservative treatment. Mr. Rudolph was restricted to light duty for a period of two weeks. He also noted tingling in his hands. Dr. Lee opined that those symptoms did not appear to be related to the injury.

Mr. Rudolph returned to Dr. Lee on March 1, 2000. Dr. Lee noted that Mr. Rudolph's pain had decreased but that he had pain over his lateral chondral. Dr. Lee diagnosed a lateral epicondylitis and continued the work restrictions for two more weeks.

On March 15, 2000, Dr. Lee noted mild improvement over the preceding two weeks. Mr. Rudolph returned to mild duty and was very productive as a welder. Dr. Lee diagnosed tennis elbow with transient CTS (a term in this case unrelated to the sport) and prescribed light duty for one more month as the acute injury resolved.

Mr. Rudolph saw Dr. Lee on April 17, 2000. Dr. Lee noted steady improvement and that Mr. Rudolph's pain had settled into the lateral epicondyle region of the left elbow. Dr. Lee recommended an injection but Mr. Rudolph declined.

On May 2, 2000, Dr. Lee sent a letter to the Surety noting that Mr. Rudolph suffered a left shoulder strain with diffuse tenderness in his left hand, forearm, elbow, arm, and shoulder. Dr. Lee was of the opinion that with the passage of time, the left upper extremity injury had "evolved into symptoms consistent with lateral epicondylitis." He stated that no further medical treatment was planned and noted that Mr. Rudolph was back at regular work duty without restrictions.

On September 6, 2000, Dr. Lee wrote a final chart note relating to the treatment. Mr. Rudolph reported that he was back to his normal job as a welder. His tennis elbow pain was controlled through medication and an elbow sleeve. Dr. Lee stated that the job as a welder could, more probably than not, have resulted in the tennis elbow type symptoms.

In October 2000, Mr. Rudolph left his employment and took a job in Boise. Subsequently, he moved to Clovis, California. On March 16, 2001, he notified Surety that he would be seeing Dr. Emmanuel Conanan as his treating physician. Mr. Rudolph complained of shoulder pain. The shoulder was tender on palpation, and the range of motion was limited due to pain. Dr. Conanan noted

that Mr. Rudolph injured his shoulder in an industrial accident in Idaho and that no radiological or other testing was done.

On March 19, 2001, an MRI revealed mild acromioclavicular degenerative changes with subacromial spurring and some impingement of the suprasinatus tendon. Dr. Conanan diagnosed left shoulder derangement, noted that Mr. Rudolph was treated with a painkiller in Idaho with no other testing, and restricted repetitive gripping or grasping. A referral to an orthopedic specialist was approved by the Surety around April 11, 2001.

Mr. Rudolph saw Dr. Bruce Witmer, an orthopedic surgeon, who mailed a report to Surety on May 11, 2001. Dr. Witmer noted an acute onset of pain from the shoulder to the hand on the date of the industrial accident and noted three distinct complaints at the time of the exam: (1) lateral pain in the shoulder related to shoulder use, (2) lateral elbow pain with gripping and manipulating activities, and (3) numbness in the left hand primarily at night. Dr. Witmer opined that Mr. Rudolph suffered chronic subacromial impingement with rotator cuff tendonitis/bursitis, acromioclavicular degenerative arthritis aggravating the impingement, possible labral tear or some internal derangement, lateral left epicondylitis, and probable CTS in the left wrist. Dr. Witmer noted that these conditions tend to have radiating and migrating symptoms. He recommended corrective shoulder surgery, including arthroscopic evaluation, subacromial decrompression, and distal clavicle resection. He recommended a similar procedure on the left elbow and CTS release if diagnostic tests were positive.

Dr. Witmer restricted Mr. Rudolph to no overhead lifting with the left upper extremity and released him from work for six weeks pending surgery. On May 24, 2001, at the Surety's request, Dr. John McManus, an orthopedic surgeon, reviewed the medical records and authored a report in which he opined that the mild January 27, 2000, shoulder strain resolved by March 2000 and the current shoulder complaints were not related to the accident. He further opined that the current impingement and acromioclavicular arthritis symptoms were not due to the accident but are age related and due to current activities. Dr. McManus did not relate the lateral epicondylitis to the accident because of the lapse of time between episodes and the lack of relationship to the initial injury. Finally, Dr. McManus stated the CTS symptoms were also unrelated to the accident.

On May 30, 2001, the Surety denied surgery and further treatment. On January 31, 2002, Dr. McManus along with Dr. Michael Weiss, a specialist in physical medicine, and Dr. Al Kuykendall, a neurological surgeon, saw Mr. Rudolph for an independent medical examination ("IME"). They opined that Mr. Rudolph suffered acromioclavicular degenerative changes with secondary supraspinatus tendon impingement and they felt that he suffered degenerative changes with secondary supraspinatus tendon impingement. They were of the opinion that Mr. Rudolph suffered degenerative changes that were a type of arthritis and not due to the industrial accident. Mr. Rudolph's AC joint tenderness was not noted in the medical file until the March 2001 visit with Dr. Conanan. The tennis elbow symptoms appeared to have resolved, and the CTS-like symptoms were also unrelated to his work accident. They opined that Mr. Rudolph suffered no permanent impairment. They listed restrictions related to the AC joint arthritis and CTS.

Mr. Rudolph testified that he had seen various doctors and had received treatment over the years since the accident. He testified that he experienced pain and numbness in his left shoulder, arm and fingers that was getting worse since the accident. He testified that he was currently working in a light duty position making half his former pay.

In deposition testimony Dr. Weiss stated that Mr. Rudolph's complaints were not related to his industrial accident. His shoulder problem was due to arthritis rather than a specific injury and the CTS was not due to trauma. Further, the AC joint tenderness was not documented until over a year after the accident. Dr. Weiss was of the opinion that the recommended surgeries were not related to the industrial accident.

Dr. McManus testified by deposition that none of the symptoms were related to the industrial accident and that under ordinary

circumstances, epicondylitis is not related to a specific injury, although it can be.

Dr. Kuykendall testified that he could not find anything significantly wrong with Mr. Rudolph, stating that acromioclavicular arthritis is generally considered hereditary in nature unless arising from very sever trauma. He felt that the CTS diagnosis was rather dubious.

The Industrial Commission determined that Mr. Rudolph did not meet his burden of proving that his current complaints and recommended surgeries are related to the industrial accident.

## II.

### STANDARD OF REVIEW

Idaho Code § 72–732 sets forth the standard of review to be applied in an appeal to the Supreme Court from a decision of the Industrial Commission. This Court may set aside the order or award upon any of the following grounds: (1) the Commission's findings of fact are not based on any substantial competent evidence; (2) the Commission has acted without jurisdiction or in excess of its powers; (3) the findings of fact, order or award were procured by fraud; (4) the findings of fact do not as a matter of law support the order or award.

■ This Court exercises free review over the Commission's legal conclusions. *Moore v. Melaleuca,* 137 Idaho 23, 26, 43 P.3d 782, 785 (2002). However, the Court will not disturb the Commission's factual findings that are supported by substantial and competent evidence. *Dennis v. School Dist. No. 91,* 135 Idaho 94, 96, 15 P.3d 329, 331–32 (2000). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Jensen v. City of Pocatello,* 135 Idaho 406, 412, 18 P.3d 211, 217 (2000). "The substantial evidence rule requires a court to determine whether the agency's findings of fact are reasonable. In deciding whether the agency's findings of fact were reasonable, reviewing courts should not read only one side of the case and, if they find any evidence there, sustain the administrative action and

ignore the record to the contrary." *Kirk v. Karcher Estates, Inc.,* 135 Idaho 230, 232, 16 P.3d 906, 908 (2000).

## III.

### THE INDUSTRIAL COMMISSION'S DECISION THAT THE CURRENT COMPLAINTS AND RECOMMENDED SURGERIES ARE NOT RELATED TO THE INDUSTRIAL ACCIDENT IS SUPPORTED BY SUBSTANTIAL, COMPETENT, THOUGH CONFLICTING EVIDENCE

■ The Industrial Commission determined that Mr. Rudolph had not met his burden of showing that his current complaints were related to the industrial accident of January 27, 2000. More than likely they were related to such things as degenerative arthritic conditions unrelated to the accident. There is ample evidence in the record to support these findings. The medical evidence presented by Mr. Rudolph comes from physicians who diagnosed the shoulder problems but did not report that the injuries were related with any degree of medical certainty to the January 27, 2000, industrial accident. On the other hand, the reports and depositions of Dr. Weiss, Dr. McManus, and Dr. Kuykendall state that the injuries were not related to the industrial accident. There is substantial competent evidence to support the decision of the Industrial Commission.

## IV.

### CONCLUSION

The decision of the Industrial Commission is affirmed. The Surety is awarded costs.

Chief Justice TROUT, Justices KIDWELL, EISMANN and BURDICK concur.