118 P.3d 111

**Gregorio HERNANDEZ, Claimant–Appellant,**

v.

**William D. PHILLIPS, dba Lazy Cross Land & Livestock, Employer, and Farm Bureau/Western Community Insurance, Surety, Defendants–Respondents.**

No. 30426.

Supreme Court of Idaho, Boise, May 2005 Term.

July 22, 2005.

Curtis & Browning, Idaho Falls, Idaho, for appellant.

Bowen, Gardner & Bailey, LLP, Boise, for respondents.

JONES, Justice.

In this worker's compensation case, Gregorio Hernandez appeals the order of the Industrial Commission fixing his eligibility for income and medical benefits and denying his request for attorney fees.

## I.

In May 1998, while working for Lazy Cross Land & Livestock (Lazy Cross), Hernandez was bucked off a horse and injured his neck and one of his hands. He sought treatment and in July he filed a claim for worker's compensation benefits. Lazy Cross' insurer, Farm Bureau/ Western Community Insurance, (Surety) paid temporary income benefits beginning on the date of Hernandez' injury but stopped paying on August 21, 1998. The Surety apparently paid some, but not all, of Hernandez' medical bills, as well. Hernandez believed he was

entitled to income and medical benefits beyond those the Surety had provided, so his claim was sent to a referee for a hearing in October 2002. A substantial amount of medical information was submitted to the referee, as were post-hearing depositions of certain physicians who had examined Hernandez. In October 2003, the referee issued a decision finding that Hernandez had reached "maximum medical improvement" (MMI) as of March 9, 1999, and thus was entitled to benefits and treatment through, but not after, that date. The referee also denied Hernandez' request for attorney fees. The Industrial Commission adopted the referee's findings and issued an order reflecting the referee's decision. Hernandez timely appealed. We have jurisdiction over appeals from the Industrial Commission, Idaho Const. Art. V, § 9, and we affirm.

## II.

Hernandez contends the issue of maximum medical improvement was not properly an issue for decision, and, failing that, the decision on MMI is not supported by substantial evidence. He also challenges the referee's refusal to award him attorney fees. The respondents, on the other hand, contend this appeal is frivolous and request attorney fees and sanctions on appeal for defending it.

### A.

■ Due process concerns have led us to say that "[a]n administrative tribunal may not raise issues without first serving the affected party with fair notice and providing him with a full opportunity to meet the issue." *White v. Idaho Forest Indus.*, 98 Idaho 784, 786, 572 P.2d 887, 889 (1977). The legislature has codified this rule, requiring the Commission to provide the parties with written notice of the issues that will be heard prior to the hearing. I.C. § 72–713. In this case, the referee's decision stated that the issues to be decided at the hearing were: (1) whether, and to what extent, Hernandez was entitled to medical benefits, including cervical spine surgery; (2) whether, and to what

extent, Hernandez was entitled to temporary partial and/or temporary total disability benefits; and (3) whether Hernandez was entitled to attorney fees. Hernandez acknowledges he was notified that these would be the issues for decision. He contends, however, that while income and medical benefits were at issue, impairment and medical stability were not.

■ Obviously, the specific question of MMI (or medical stability [1]) was not specifically stated in the text of the issues statement. Hernandez seems to be operating on the assumption that medical stability is relevant only to questions of permanent impairment (I.C. § 72–422) and permanent disability (§ 72–423). This assumption is wrong. When a worker is injured, he is entitled to so-called temporary income benefits during the "period of recovery." I.C. § 72–408. Our worker's compensation statutes do not define the period of recovery, but we have said that it ends when the worker is medically stable. *Jarvis v. Rexburg Nursing Ctr.*, 136 Idaho 579, 586, 38 P.3d 617, 624 (2001). The Surety stopped payment of temporary income benefits on August 21, 1998. Hernandez claimed that he was entitled to a continuation of such benefits. If Hernandez had reached MMI on or before August 21, 1998, he was not entitled to additional temporary income benefits. On the other hand, if he had not, he was entitled to further benefits. Therefore, the MMI question was necessarily at issue by virtue of his claim for additional temporary income benefits.

We make little of Hernandez' contention that the transcript of the hearing demonstrates MMI was not an issue for decision. At the beginning of the hearing, the referee announced the issues as follows: "whether and to what extent [Hernandez] is entitled to the following benefits: Medical care; temporary partial and/or temporary total disability benefits; permanent partial impairment; retraining; disability in excess of impairment; and attorney fees." Hernandez' counsel responded that Hernandez had not reached

1. A brief note on terminology. The parties interchange "maximum medical improvement" and "medical stability" to describe the same thing.

MMI, so permanent impairment and permanent disability should not be at issue. He said further that "certainly the past medical and financial benefits and future benefits and attorney fees are an issue." The referee then stated, "I guess then one of the issues would be whether [Hernandez] is medically stable; and that would just be assumed, I guess, within permanent partial impairment. And we'll leave it that way. If [Hernandez] is not determined medically stable, then we wouldn't address those other issues." From this dialogue, it appears that Hernandez' medical stability *was* an issue.

## B.

■ If the issue of MMI was properly before the referee, Hernandez says, the finding on it was not supported by substantial evidence, as all decisions by the referee and Commission must be. I.C. § 72–732; *Lorca–Merono v. Yokes Washington Foods, Inc.,* 137 Idaho 446, 450–51, 50 P.3d 461, 465–66 (2002). As he puts it, "Absolutely no physician whatsoever provided any opinion, whether in his medical records or deposition, that [Hernandez] was medically stationary on March 9, 1999!" Technically, Hernandez is correct. No expert or physician wrote or testified or otherwise opined that March 9, 1999 was the date on which Hernandez reached MMI. While the referee did not explain why she chose March 9, it appears that it was taken from the report of Dr. Jones, who examined Hernandez on March 9, 1999. Dr. Jones wrote in his report that Hernandez reached MMI on July 7, 1998,[2] but Dr. Jones also noted in his report that Hernandez was capable of returning to work "Immediately." In his deposition, Dr. Jones testified he felt Hernandez was capable of returning to work on March 9. As the March 9, 1999 date appears nowhere else in the record that we can find, we deduce that it was perhaps from this note and testimony that the referee chose that date as the date of MMI. The referee may have found additional support for this date from the testimony of Dr. Steven Coker who treated Hernandez for the

injury. Dr. Coker stated that a patient suffering this type of injury generally reached MMI at 10 or 12 months after the injury.

At any rate, we do not agree with Hernandez that there is "absolutely no medical evidence" to support the finding of MMI. Hernandez offers no real challenge to the medical veracity of Dr. Jones' report—he characterizes Dr. Jones' opinions as "extreme," but he is utterly lacking in support for this proposition—and instead asks us to consider a letter by one Dr. Benjamin Blair, who had examined Hernandez at least once. Dr. Blair wrote on February 11, 1999 that Hernandez should be off work for the following four weeks, which would coincide with the March 9 date in Dr. Jones' report. In his post-visit notes, Dr. Blair wrote that treatment of Hernandez' "herniated nucleus pulposus of the cervical spine" was reasonable. Another physician, a Dr. Howard Reichman, examined Hernandez in September 2000 and again in March 2001. He noted after the March visit that "the only way [Hernandez] is going to get on top of the pain would be to go ahead with the cervical disectomy and fusion."

Certainly, this case illustrates the sometimes frustrating and perhaps unfortunate nature of the worker's compensation scheme: some of the medical evidence indicates Hernandez' medical condition had not stabilized; other medical evidence indicates otherwise. However, even if we conceded that there existed a question about Hernandez' medical stability, we are not fact finders—we examine the referee's and Commission's findings of fact strictly for substantial and competent evidence—and conflicting opinions of the various experts do not require a finding in Hernandez' favor or a reversal of the referee's and Commission's decision. *See Soto v. J.R. Simplot,* 126 Idaho 536, 539, 887 P.2d 1043, 1046 (1994). Nor must the referee or Commission accept one side's evidence over conflicting contrary evidence. *See, e.g., Harrison v. Osco Drug, Inc.,* 116 Idaho 470, 473, 776 P.2d 1189, 1192 (1989). While the evidence is conflicting, Hernandez has failed to

---

**2.** By finding that March 9, 1999 was the date of MMI, in light of Dr. Jones' date of July 7, 1998, it seems the referee paid Hernandez something of a

favor. Respondents have not cross-appealed the issue, however, so we will not examine whether July 7, 1998 should be the actual date of MMI.

call into legitimate doubt the referee's findings.

### C.

██ Hernandez also objects to the referee's refusal to award him attorney fees. Idaho Code § 72–804 allows attorney fees to a worker's compensation claimant when the referee or Commission finds that the employer or his surety contested a claim without reasonable grounds, refused to pay a claim within a reasonable time, or discontinued payment of compensation without a reasonable ground. Whether the employer or his surety unreasonably delayed or withheld or discontinued payments is a question of fact. *Trapp v. Sagle Volunteer Fire Dept.*, 122 Idaho 655, 656–57, 837 P.2d 781, 782–83 (1992). Hernandez argues that since the referee decided he was entitled to medical benefits and temporary income benefits for the approximately six-and-a-half-month period between the time his employer stopped paying those benefits and March 9, 1999, his employer's refusal to pay was unreasonable.

The record does not disclose exactly why the Surety stopped payments in August 1998,[3] but apparently the referee believed it was because the Surety doubted the validity of the claim. The referee found that Hernandez's "unusual and inconsistent behaviors" noted in the medical records justified the Surety's concerns with the validity of Hernandez' claim. The referee did not, however, specify which of the facts recited or behaviors noted in the medical records constituted the unusual and inconsistent behaviors that would have justified the Surety's alleged skepticism about the validity of the claim. Nevertheless, the unusual and inconsistent behaviors documented in the record and recited at various spots in the referee's decision support the finding. For instance, the referee's decision notes that Hernandez was symptom magnifying, failed to show for some medical appointments, and that when unaware he was being observed Hernandez would act differently than when he was being examined. Again, the question is not whether we would have concluded one way or the other, but rather, whether the referee's conclusion is supported by substantial evidence, that is, relevant evidence that a reasonable mind would accept as sufficient to support a conclusion. *Rudolph v. Spudnik Equip.*, 139 Idaho 776, 779, 86 P.3d 490, 493 (2004). We conclude that it was.

### D.

██ Respondents seek attorney fees and sanctions on appeal, characterizing Hernandez' appeal as frivolous, since, they contend, Hernandez has merely asked us to reconsider the evidence and side with him. True, attorney fees are allowable and proper in such a case, *Eacret v. Clearwater Forest Indus.*, 136 Idaho 733, 738, 40 P.3d 91, 96 (2002), and sanctions are available when a party pursues an appeal without a reasonable ground in fact or law, Idaho App. R. 11.1. But while the issue of frivolousness is a close one, we believe Hernandez has raised—albeit not with the strongest hoist—a legitimate issue as to whether MMI was properly before the referee for decision. He thus escapes a finding that his appeal is frivolous, and no fees or sanctions are awarded.

### III.

The order of the Industrial Commission is affirmed. No costs or fees.

Chief Justice SCHROEDER, and Justices TROUT, EISMANN and BURDICK concur.

---

3. The only evidence in the record concerning the Surety's refusal to pay consists of several letters, explaining that the results of Hernandez' March 9, 1999 visit to Dr. Jones was the reason it would no longer pay. There is no evidence in the record attributable to the Surety indicating it was skeptical of the claim prior to Hernandez' March 9, 1999 visit.