IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 41209

| | |
|---|---|
| SU WARREN, | ) |
| | ) Moscow, September 2014 Term |
| Claimant-Appellant, | ) |
| | ) 2014 Opinion No. 118 |
| v. | ) |
| | ) Filed: November 6, 2014 |
| WILLIAMS & PARSONS PC CPAS, | ) |
| Employer, and IDAHO STATE | ) Stephen W. Kenyon, Clerk |
| INSURANCE FUND, Surety, | ) |
| | ) |
| Defendants-Respondents. | |

_____

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Commission is <u>affirmed</u>.  Costs on appeal are <u>awarded</u> to respondents.

Cannon Law Firm, Lewiston, attorneys for appellant. Ned A. Cannon argued.

H. James Magnuson, Coeur d'Alene, attorney for respondents.
_____

WALTERS, J., *pro tem*

Su Warren sought worker's compensation benefits from her employer, Williams & Parsons, PC, CPAS (Williams & Parsons), and Idaho State Insurance Fund (ISIF), for injuries received on January 23, 2007, during the course of her employment. The Idaho Industrial Commission (the Commission) concluded that Warren had a permanent partial impairment (PPI) of five percent of the whole person and was entitled to temporary total disability and temporary partial disability during the period of recovery through December 23, 2008, the date of maximum medical improvement. The Commission also concluded that Warren failed to establish entitlement to medical care in the form of a pain management program, permanent disability in excess of PPI, retraining benefits, or attorney fees. The Commission denied Warren's motion for reconsideration. Warren appeals to this Court. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Warren was employed by Williams & Parsons. On January 23, 2007, Warren was injured at her work when a motor vehicle struck the wall directly outside her office, propelling her across the room. Following the accident, Warren initially complained of dizziness, facial pain, and pain in her left hand. She was treated by her primary care physician, Scott Burgstahler, M.D., who noted subtle evidence for cognitive impairment or decreased concentration ability. X-rays taken of Warren's left wrist and hand were negative. A CT scan of Warren's head taken on January 30, 2007, showed no abnormality. On February 9, 2007, Dr. Burgstahler opined in a follow-up visit that Warren had nearly fully recovered. Dr. Burgstahler recommended continuing physical therapy for her left shoulder. Warren received physical therapy from February 12, 2007, to March 15, 2007. Upon discharge from physical therapy, Warren's symptoms had improved substantially.

On March 13, 2007, Williams & Parsons terminated Warren's employment, claiming that her work performance had deteriorated approximately four months before the accident. At the time of her termination, Warren was employed full-time earning fourteen dollars per hour plus overtime during tax season.

On June 9, 2007, Warren reported some paresthesia in her hands and thumbs bilaterally. Warren had a cervical spine MRI on July 13, 2007, which showed mild bony narrowing at C3-4 and a small degenerative disc protrusion at C5-6, neither of which could be correlated to her complaints.

On August 13, 2007, Warren was examined by Jeffrey McDonald, M.D. Dr. McDonald noted diminished sensation on Warren's first finger on the right hand, but no other atypical findings on examination. Dr. McDonald also reviewed Warren's MRI, which he noted to show a moderately large disk herniation at C5-6 with a probable tear. Dr. McDonald recommended surgery. On September 4, 2007, Warren underwent an anterior cervical discectomy and fusion at C5-6.

Six months post-surgery, X-rays and a CT scan of Warren's cervical spine showed good stability and alignment. Although Warren's spine was stable, Dr. McDonald noted that the fusion was incompletely ossified. Dr. McDonald remained concerned about her pain and loss of range of motion. Dr. McDonald prescribed a TENS (Transcutaneous Electrical Nerve Stimulation) unit for Warren in January of 2008 to ameliorate her pain.

In late 2007 or early 2008, Warren secured new employment after Dr. McDonald released her to return to work following her cervical spine fusion. As of May 10, 2012, the date of Warren's hearing in this matter, she was employed by the City of Ponderay as a clerk, earning $18.43 per hour plus full-time benefits on a thirty-two hour work week. She also worked part-time for a winery. Both the City of Ponderay and the winery voluntarily provided Warren with ergonomic work stations to help her cope with ongoing complaints of neck pain.

On May 12, 2008, Warren reported neck pain and generalized fatigue. On June 19, 2008, Warren reported significant improvement with some residual muscle tightness. Warren also reported that use of the bone stimulator had been helpful.

On June 29, 2008, Warren was involved in a motorcycle collision unrelated to her worker's compensation claim. Warren was a passenger on a motorcycle when it hit a deer. She was not wearing a helmet. In that accident, she dislocated her left shoulder, broke bones in her left leg, and suffered several scrapes, lacerations, and bruises. Michael DiBenedetto, M.D., noted during his examination that Warren denied neck pain and that she had painless range of motion. Dr. DiBenedetto surgically repaired Warren's tibia and fibula fractures and repaired her fractured ankle.

During a follow-up appointment with Dr. DiBenedetto on August 1, 2008, Warren reported pain and loss of strength and range of motion in her left arm. Warren also was examined by Dr. McDonald on August 1, 2008. She reported the motorcycle accident, but did not describe any neck or upper extremity symptoms. Warren continued to use the bone stimulator. X-rays showed the ossification remained incomplete, but alignment and stability remained good.

On August 14, 2008, Warren had a left shoulder MRI which showed a tear of the anterior tendon. On September 23, 2008, Dr. DiBenedetto repaired Warren's torn rotator cuff. He opined that the rotator cuff repair was made necessary due to the motorcycle accident.

On October 28, 2008, cervical spine X-rays showed no problems with the alignment or condition of Warren's neck or the fusion appliances. Warren declined additional physical therapy. On October 30, 2008, Dr. McDonald recommended that Warren discontinue use of the bone stimulator after she reported dramatic improvement since August.

On December 23, 2008, Warren was examined by J. Craig Stevens, M.D., at the request of Williams & Parsons in relation to her January 23, 2007, work accident. Dr. Stevens opined in his Independent Medical Evaluation (IME) that Warren suffered a cervical disc herniation as a

result of the work-related accident and her condition was fixed and stable. Dr. Stevens determined that Warren suffered PPI rated at five percent of the whole person as a result of the injury, surgery, and continuing subjective complaints of nonverifiable mild residual radiculopathy. Dr. Stevens did not recommend any specific work restrictions.

On April 30, 2009, Warren returned to Dr. Burgstahler with complaints that "her neck really hasn't been right ever since the work accident and fusion surgery." Warren also reported to Dr. Burgstahler that she "was rated for disability at 5% and she is convinced her disability is significantly higher than that." Dr. Burgstahler referred Warren to a neurosurgeon, John Demakas, M.D., who had been recommended by Warren's attorney. Dr. Demakas consulted with Warren and agreed that her cervical fusion "looked fine." On October 20, 2009, Warren reported to Dr. Burgstahler a little dysphoria with reduced cognitive awareness since the work accident. A cervical spine MRI obtained on December 3, 2009, showed minimal degenerative changes at levels other than the stable fusion. From June to November of 2009, Warren also underwent acupuncture and other nontraditional therapeutic treatments.

On April 9, 2010, Dr. McDonald disputed Warren's claim to Dr. Burgstahler that her neck had never really improved. Dr. McDonald confirmed that according to his records, Warren had almost completely improved by at least August or September of 2008. Dr. McDonald also concurred with the conclusions reached by Dr. Stevens in his IME and noted that the December 2009 MRI findings showed no new problem or change in Warren's neck condition.

On August 9, 2010, Warren filed a worker's compensation complaint with the Commission against Williams & Parsons for injuries related to the January 23, 2007, work accident.

On May 20, 2011, and August 5, 2011, Craig Beaver, Ph.D., evaluated Warren's mental and psychological status at the request of Williams & Parsons. Three of the four tests administered by Dr. Beaver indicated that Warren was consciously or unconsciously over-reporting her symptoms. Dr. Beaver diagnosed Warren with (1) dysthymic disorder; (2) pain disorder associated with psychological factors and medical condition; and (3) adjustment disorder with anxious mood. Dr. Beaver opined that while the work-related accident did contribute in some respect to his diagnosis, it was not the predominant cause of his diagnosis. Dr. Beaver's report reflects his opinion that fifty percent of the adjustment disorder with anxious mood was attributable to the work-related accident. Dr. Beaver also opined that the three

4

psychological diagnoses were not significant enough to warrant an impairment rating or restrictions. Further, Dr. Beaver noted that Warren was functioning well in her new position with the City of Ponderay, "her psychological diagnoses notwithstanding." Dr. Beaver testified that Warren "might benefit from a chronic pain management program as part of an effort to resolve some of her pain complaints related to her psychological pain disorder." However, Dr. Beaver testified that the need for the chronic pain management program was only partly related to the work accident, which was in accordance with his written report.

In response to Dr. Beaver's reports, Warren & Parsons represented in writing on August 23, 2011, September 20, 2011, July 27, 2012, August 23, 2012, and August 24, 2012, that it was willing to pay for Warren to attend one of several pain management programs. Warren has not attended a pain management program despite the offers from Williams & Parsons.

Warren's prior medical history is significant for depression and anxiety, back, neck and upper back pain, headaches, fatigue and malaise, as well as left foot, knee, and left shoulder injuries from a bike accident in 1999.

Vocational expert Douglas Crum completed an evaluation of Warren for Williams & Parsons. He opined that Warren likely suffered no loss of access to her local labor market and no loss of wage-earning potential as a result of the work accident.

On May 10, 2012, a hearing was held in this matter before Referee Douglas A. Donahue. Warren requested a continuance, claiming that Warren was not at maximum medical improvement (MMI) and continued to suffer physical and psychological injuries as a result of the accident. Williams & Parsons objected to a continuance of the hearing. The Referee denied Warren's request. In addition, the Referee excluded pages 47 through 57 of Exhibit 2, pages 48 through 69 of Exhibit 12, and all of Exhibit 19 from the record, finding that they were untimely produced without good cause under Judicial Rule of Practice and Procedure 10.

On October 5, 2012, Warren filed another motion to stay the proceedings on the bases that she had been authorized to attend a pain management program and that reevaluation of her impairment and disability would be appropriate following the program. Williams & Parsons objected. The Commission denied Warren's motion.

On March 27, 2013, the Commission concurred with the Referee's recommendations and adopted the Referee's findings and conclusions. The Commission concluded: (1) Warren injured her neck as a result of the work accident; (2) Warren was entitled to total temporary disability

5

(TTD) and total permanent disability (TPD) during the period of recovery; (3) Warren was entitled to medical care received, related to the accident, through December 23, 2008; (4) Warren did not show her entitlement to medical care in the form of a pain management program; (5) Warren was entitled to a PPI rating of five percent of the whole person; (6) Warren failed to show she was entitled to permanent partial disability (PPD) in excess of PPI; (7) Warren failed to show entitlement to retraining benefits; and (8) Warren failed to show a basis for attorney's fees.

On April 10, 2013, Warren filed a motion for reconsideration. On May 30, 2013, the Commission denied Warren's motion to reconsider. Warren timely appealed to this Court.

## II. ISSUES ON APPEAL

**A.**  Whether the Commission erred in denying Warren's motion to stay the May 10, 2012, hearing.

**B.**  Whether the Commission erred in excluding pages 47 through 57 of Exhibit 2, pages 48 through 69 of Exhibit 12, and all of Exhibit 19.

**C.**  Whether the Commission had substantial and competent evidence to conclude that Warren had reached MMI on December 23, 2008.

**D.**  Whether the Commission had substantial and competent evidence to conclude that Warren did not suffer a compensable psychological injury under Idaho Code section 72-451.

**E.**  Whether the Commission had substantial and competent evidence to conclude that Warren did not suffer PPD in excess of PPI.

**F.**  Whether the Commission erred by denying Warren's request for attorney's fees and costs.

**G.**  Whether either party is entitled to attorney fees and costs on appeal.

## III. STANDARD OF REVIEW

"The terms of Idaho's workers' compensation statute are liberally construed in favor of the employee. However, conflicting facts need not be construed liberally in favor of the worker." *Mazzone v. Texas Roadhouse, Inc.*, 154 Idaho 750, 755, 302 P.3d 718, 723 (2013).

In reviewing decisions by the Commission, "This Court exercises free review over the Commission's conclusions of law, but will not disturb the Commission's factual findings if they are supported by substantial and competent evidence." *Knowlton v. Wood River Med. Ctr.*, 151 Idaho 135, 140, 254 P.3d 36, 41 (2011) (citing I.C. § 72-732)). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *McNulty v. Sinclair Oil Corp.*, 152 Idaho 582, 584–85, 272 P.3d 554, 556–57 (2012) (quoting *Uhl v. Ballard Med. Prods., Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003)). "Substantial

6

evidence is more than a scintilla of proof, but less than a preponderance." *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). The Court does not re-weigh the evidence, and "[t]he Commission's conclusions regarding the credibility and weight of evidence will not be disturbed unless they are clearly erroneous." *Knowlton*, 151 Idaho at 140, 254 P.3d at 41. All facts and inferences are viewed in the light most favorable to the party who prevailed before the Commission. *Zapata*, 132 Idaho at 515, 975 P.2d at 1180.

Discretionary decisions are reviewed using a three-part test: "(1) whether the Commission correctly perceived the issue as one of discretion, (2) whether it acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it, and (3) whether it reached its decision by an exercise of reason." *Flowers v. Shenango Screenprinting, Inc.*, 150 Idaho 295, 297, 246 P.3d 668, 670 (2010) (quoting *Super Grade, Inc. v. Idaho Dep't of Commerce and Labor*, 144 Idaho 386, 390, 162 P.3d 765, 769 (2007)).

## IV. ANALYSIS

### A.    The Commission Did Not Err By Denying Warren's Motion To Stay The May 10, 2012, Hearing.

Warren argues that her case was prejudiced by the Commission's decision to deny her motion to stay the May 10, 2012, hearing.

"The decision to grant or deny a continuance is discretionary, a court may not refuse a continuance where the ends of justice clearly require it to be granted." *Ball v. Daw Forest Prods. Co.*, 136 Idaho 155, 160, 30 P.3d 933, 938 (2001). *See also State v. Hoagland*, 39 Idaho 405, 409, 228 P. 314, 318 (1924) (trial court did not abuse its discretion when it refused to grant defendant's motion for continuance based upon the absence of a material witness whom it found defendant "had had ample time to secure").

In denying Warren's motion to stay the hearing, the Referee determined:

> [Warren]'s accident happened in 2007. A pain management program in 2012 represents palliative treatment. It would not, contrary to [Warren]'s assertions, impact permanent impairment or disability. Among competing goals under Idaho's Workers' Compensation Law, finality is one. [Warren]'s Motion to Stay Proceedings does not show cause to further delay resolution of this matter.

Subsequently, the Commission noted in its order denying Warren's motion for reconsideration that the Commission had vacated and reset the hearing on multiple occasions. The Commission found Warren's multiple requests to vacate and reset the hearing "perplexing" in light of the fact

7

that her claim was similar to many cases litigated before the Commission. The Commission explained:

> While [Warren] had the burden of establishing her need for the requested medical care, impairment, and disability, she appears to have either expected Defendants' [sic] to develop the expert medical testimony necessary for her to prevail, or have the Commission indefinitely postpone the ultimate resolution of the case. This, the Commission could not do.

The Commission concluded that Warren's failure to persuasively support her case was an improper reason to vacate its order. The Commission's decision was not beyond its authority or unreasonable in light of multiple prior stays it previously granted in this case. We hold that the Commission did not abuse its discretion by denying Warren's request to continue the May 10, 2012, hearing.

**B.      The Commission Did Not Err In Excluding Portions of Exhibits 2 And 12 And Exhibit 19 In Its Entirety.**

Warren argues that the Commission erred when it excluded pages 47 through 57 of Exhibit 2, pages 48 through 69 of Exhibit 12, and all of Exhibit 19 by misapplying Judicial Rule of Practice and Procedure (J.R.P.) 10(C) in the context of the Idaho's worker's compensation law.

Evidentiary issues are governed under an abuse of discretion standard and the Commission's "decision to admit medical records into evidence is a matter of discretion." *Fonseca v. Corral Agric., Inc.*, 156 Idaho 142, 149, 321 P.3d 692, 699 (2014).

The Commission determines the rules and regulations it will adopt regarding discovery and production of exhibits. Specifically, Idaho Code section 72-508 provides in relevant part:

> [T]he commission shall have authority to promulgate and adopt reasonable rules and regulations for effecting the purposes of this act. Notwithstanding the provisions of chapter 52, title 67, Idaho Code, the commission shall have authority to promulgate and adopt reasonable rules and regulations involving judicial matters. In administrative matters and all other matters, the commission shall be bound by the provisions of chapter 52, title 67, Idaho Code. Rules and regulations as promulgated and adopted, if not inconsistent with law, shall be binding in the administration of this law.

I.C. § 72-508. "All questions arising under this law, if not settled by agreement or stipulation of the interested parties with the approval of the commission, except as otherwise herein provided, shall be determined by the commission." I.C. § 72-707. "Pursuant to Idaho Code §§ 72-508 and 72-707," the Commission adopted the Judicial Rules of Practice and Procedure "as governing

judicial matters under its jurisdiction as provided by the Idaho Workers' Compensation Law." J.R.P., intro. cmt.

> J.R.P. 10(C) provides:
>
> 1.  Unless good cause is shown to the contrary at least 10 days prior to a hearing, each party shall serve on all other parties complete, legible, and accurate copies of all exhibits to be offered into evidence at hearing, including but not limited to medical records. The proposed exhibits shall be arranged in chronological order with the first exhibit as the earliest date proceeding to the latest date. All pages within each exhibit shall be numbered in consecutive order. Each party shall file a notice with the Commission that service of such exhibits has been completed.
> 2.  In the event that the existence of a proposed exhibit is discovered in good faith and with due diligence less than 10 days before the date of hearing, the party discovering the same shall immediately notify all other parties of the existence of the exhibit. The party shall also serve a complete, legible and accurate copy of the exhibit on all other parties, and file with the Industrial Commission a notice indicating the proposed exhibit has been served.

This rule requires that the parties exchange exhibits at least ten days before the hearing. J.R.P. 10(C)(1). The only exception to this rule is if a party can show that the exhibit was not available prior to hearing, despite good faith and due diligence, and the party discovering the exhibit immediately gives notice to all other parties and the Commission. J.R.P. 10(C)(2). Further, J.R.P. 7(C) requires that parties adhere to the Idaho Rules of Civil Procedure in conducting discovery. J.R.P. 7(C).

Idaho Rule of Civil Procedure (I.R.C.P.) 26(b)(1) and (b)(4) govern the scope of discovery and disclosure of expert opinions. In *Radmer v. Ford Motor Co.*, the Court stated that I.R.C.P. 26 "unambiguously imposes a continuing duty to supplement responses to discovery with respect to the substance and subject matter of an expert's testimony where the initial responses have been rejected, modified, expanded upon, or otherwise altered in some manner." 120 Idaho 86, 89, 813 P.2d 897, 900 (1991). "Typically, failure to meet the requirements of Rule 26 results in exclusion of the proffered evidence." *Radmer*, 120 Idaho at 89, 813 P.2d at 900.

In this case there are three pieces of evidence at issue. Exhibit 2, pp. 47–57, contained medical records for Warren from Internal Medicine Associates for treatment received in 2011. Warren did not provide Williams & Parsons with a copy of Exhibit 2, pp. 47–57, until two days prior to the hearing. Exhibit 12, pp. 48–69, was a neuropsychological report by Michelle White, Ph.D. It was not provided to Williams & Parsons until the day before the hearing. Exhibit 19

depicted unpaid medical expenses.[1] It was not disclosed to Williams & Parsons until the day of hearing.

The Commission determined that the record indicated Warren had access to Exhibit 2 pp. 47–57, Exhibit 12 pp. 48–69, and all of Exhibit 19 in advance of hearing. The Commission found:

> All of [Warren]'s additional evidence was discoverable prior to the time of the hearing. The proposed Exhibit 2, pp. 47–57, contained medical records from 2011, which were not exchanged with Defendants until two days before the May 10, 2012 hearing. Similarly, the proposed Exhibit 12, pp. 48 to 69, was untimely exchanged, and never disclosed in connection with Defendants' discovery request. Because proposed Exhibit 12 contained treatment from 2009 to 2011, it certainly could have been developed and produced in a timely manner. [Warren]'s proposed Exhibit 19 was not exchanged with Defendants until the day of hearing, leaving Defendants no opportunity to review the same.

The Commission concluded that Warren did not provide "good cause" to explain why the exhibits were not supplemented in discovery responses or disclosed to counsel prior to the May 10, 2012, hearing as required by J.R.P. 10(C), I.R.C.P. 26(b)(1), and I.R.C.P. 26(b)(4).

Warren claims that financial reasons out of her control caused her to fail to obtain and exchange Exhibit 12, pp. 48–69, with Williams & Parsons. However, the Commission noted that Warren had sufficient time to obtain the report prior to the May 10, 2012, hearing, and the record supports that determination. Dr. White's excluded report was dated April 20, 2012, based on evaluations from August 30, 2009, to January 18, 2010, and the hearing took place more than twenty days later.

Warren also claims that the Commission is not bound by the "technical" rules of evidence and that the Commission's failure to leniently construe the rules in her favor is an abuse of discretion. However, whether to exclude or admit evidence in the "more relaxed" worker's compensation context is precisely the kind of the decision subject to the Commission's discretion. *Hagler v. Micron Tech., Inc.*, 118 Idaho 596, 598, 798 P.2d 55, 57 (1990). Pursuant to the abuse of discretion standard of review, this Court "will not supplant the views" of the Commission with its own. *State v. Windom*, 150 Idaho 873, 875, 253 P.3d 310, 312 (2011).

We hold that the Commission acted within its discretion and consistently with the legal standards to find that Warren failed to show good cause. We also conclude that the Commission

---

[1] All but three of Exhibit 19's entries detailing charges for treatment claimed as a result of the work injury were for treatment received between the January 23, 2007, the date of Warren's work injury, and May 1, 2012. The hearing was held on May 10, 2012.

reached its decision to exclude the exhibits by an exercise of reason. Based on the evidence in the record, we hold that the Commission did not abuse its discretion by excluding pages 47 through 57 of Exhibit 2, pages 48 through 69 of Exhibit 12, and all of Exhibit 19 from these proceedings.

**C.      The Commission Had Substantial And Competent Evidence To Find That Warren Reached MMI On December 23, 2008.**

Warren challenges the Commission's finding that she reached MMI on December 23, 2008, arguing that it was not supported by substantial and competent evidence.

In *Hernandez v. Phillips*, the claimant Hernandez challenged the Commission's finding that he had reached MMI. 141 Idaho 779, 781, 118 P.3d 111, 113 (2005). In holding that there was substantial and competent evidence to support the Commission's finding, this Court stated:

> Certainly, this case illustrates the sometimes frustrating and perhaps unfortunate nature of the worker's compensation scheme: some of the medical evidence indicates Hernandez' medical condition had not stabilized; other medical evidence indicates otherwise. However, even if we conceded that there existed a question about Hernandez' medical stability, we are not fact finders—we examine the referee's and Commission's findings of fact strictly for substantial and competent evidence—and conflicting opinions of the various experts do not require a finding in Hernandez' favor or a reversal of the referee's and Commission's decision. *See Soto v. J.R. Simplot*, 126 Idaho 536, 539, 887 P.2d 1043, 1046 (1994). Nor must the referee or Commission accept one side's evidence over conflicting contrary evidence. *See, e.g.*, *Harrison v. Osco Drug, Inc.*, 116 Idaho 470, 473, 776 P.2d 1189, 1192 (1989). While the evidence is conflicting, Hernandez has failed to call into legitimate doubt the referee's findings.

*Hernandez*, 141 Idaho at 782–83, 118 P.3d at 114–15. Thus, in *Hernandez*, this Court found substantial and competent evidence to support a finding of MMI despite conflicting medical testimony.

In this case, there is no conflicting medical evidence to dispute the conclusions of Dr. McDonald and Dr. Stevens that Warren had reached MMI on December 23, 2008. The evidence in the record establishes the existence of substantial, competent, and uncontested evidence to support the Commission's findings. First, Dr. McDonald took X-rays of Warren's cervical spine on October 28, 2008, which established that the alignment and fusion was stable. Second, Dr. Stevens examined Warren on December 23, 2008, and concluded her cervical injuries were fixed and stable, and that she had reached MMI. Third, a cervical spine MRI on December 3, 2009, confirmed that the fusion remained stable. Fourth, Warren herself obtained a second opinion in

11

December 2009 from neurosurgeon, John Demakas, M.D., and he concluded that her fusion looked "fine." Fifth, on April 9, 2010, Dr. McDonald wrote a letter disputing Warren's statement to Dr. Burgstahler that her neck had never really improved, noting that according to his records, Warren had almost completely improved by at least August or September 2008. Dr. McDonald also concurred with Dr. Steven's findings and conclusions.

Warren's contention the Commission lacked substantial and credible evidence of MMI is not supported by the record before this Court. In reaching its decision that Warren reached MMI on December 23, 2008, and thus was not entitled to further medical treatment or services, the Commission relied upon uncontradicted evidence in the record from Dr. McDonald, as well as the IME completed by Dr. Stevens. Based upon the record, and viewing the facts in the light most favorable to the prevailing party, there is substantial and competent evidence to conclude Warren reached MMI on December 23, 2008.

**D.  The Commission Had Substantial And Competent Evidence To Find That Warren Did Not Suffer A Compensable Psychological Injury Under Idaho Code Section 72-451.**

Warren argues that the Commission lacked substantial and competent evidence to conclude that she did not establish a compensable psychological injury predominantly caused by the work accident.

"According to Idaho Code section 72-451, physical-mental injuries are compensable." *Luttrell v. Clearwater Cnty. Sheriff's Office*, 140 Idaho 581, 584, 97 P.3d 448, 451 (2004).

> A physical-mental claim is compensable pursuant to I.C. § 72-451 when the following conditions are satisfied: (1) The injury was caused by an accident and physical injury or occupational disease or psychological mishap accompanied by resultant physical injury; (2) The injury did not arise from conditions generally inherent in every working situation or from a personnel related action; (3) Such accident and injury must be the predominant cause as compared to all other causes combined of any consequence; (4) The causes or injuries must exist in a real and objective sense; (5) The condition must be one which constitutes a diagnosis under the American Psychiatric Association's most recent diagnostic and statistics manual, and must be diagnosed by a psychologist or psychiatrist licensed in the jurisdiction in which treatment is rendered.

*Mazzone v. Texas Roadhouse, Inc.*, 154 Idaho 750, 756, 302 P.3d 718, 724 (2013). "[I]t must be proven by clear and convincing evidence that the psychological injuries arose out of and in the course of the employment from an accident or occupational disease." I.C. § 72-451(6). The

burden for establishing a causal connection between a work accident and injury rests with the claimant. *Stevens-McAtee v. Potlatch Corp.*, 145 Idaho 325, 332, 179 P.3d 288, 295 (2008).

In *Mazzone*, the claimant Mazzone appealed the Commission's denial of worker's compensation benefits pursuant to Idaho Code section 72-451 "for psychological injuries allegedly arising as a result of an industrial accident wherein Mazzone tripped and fell, plunging his right arm into a deep fat fryer while employed at Texas Roadhouse." 154 Idaho at 753, 302 P.3d at 721. The Court upheld the Commission's decision because the claimant had not demonstrated his work injury was the "predominant cause of his PTSD and symptoms; particularly in light of his prior medical history and his post-incident recovery." *Id.* at 757, 302 P.3d at 725. The Court explained the "predominant cause standard" as:

> Although an employer takes an employee as he is, in determining the predominant cause of a psychological condition, the contribution of all of the employee's pre-accident factors must be weighed against the contribution of the industrial accident. To be the predominant cause, the work injury must be a greater cause of the psychological condition than all other causes combined.

*Id.* (quoting *Smith v. Garland Constr. Serv.*, 2009 IIC 0179, at ¶ 29 (2009)). Relevant here, "predominant" means the "greater cause." *Id.*

In this case, the Commission based its decision on the third requirement from Idaho Code section 72-451 that "[s]uch accident and injury must be the predominant cause as compared to all other causes combined of any consequence." I.C. § 72-451(3). We agree that this requirement forecloses Warren's claim for a compensable psychological injury. The Commission explained:

> Of central importance, [Warren] must demonstrate that the subject accident is the "predominant cause as compared to all other causes combined" of the psychological injury in question. Here, the evidence fails to establish causation per this elevated burden of proof; it is not disputed that the subject accident is, in some respect, responsible for contributing to this psychological diagnoses referenced by Dr. Beaver, but the evidence fails to establish that the subject accident is the predominant cause of those conditions.
> . . . .
> [Warren] has not demonstrated that the underlying psychological condition to be addressed in the chronic pain management program is causally related to the subject accident under the standard set by Idaho Code § 72-451. Absent proof of a causal connection between [Warren]'s alleged psychological condition and the subject accident, the date of medical stability for conditions causally related to the subject accident stands at December 23, 2008.

As recognized by the Commission, the uncontradicted records and testimony of Dr. Beaver show that Warren did not suffer a compensable psychological injury. Dr. Beaver diagnosed Warren

with three psychological disorders. He determined that only one of Warren's three diagnoses was directly attributable to the work accident: her diagnosis of adjustment disorder with anxious mood was fifty percent attributable to the work injury and fifty percent to other non-industrial factors. After issuing his report, Dr. Beaver testified that the adjustment disorder with anxious mood had not "met the criteria for being predominantly caused, above all other causes," by the work accident. With only fifty percent attribution to one of three psychological diagnoses, Warren's work injury was not the predominant, greater cause as compared to all other causes of Warren's diagnoses. *See Mazzone*, 154 Idaho at 757, 302 P.3d at 725.

Warren also submits that Dr. Beaver's testimony that she might benefit from a chronic pain management program supports her claim that she had a compensable psychological injury. However, Warren appears to ignore Dr. Beaver's opinion that the need for such a program "was only partially related" to the work accident. Specifically, Dr. Beaver testified:

> [T]he cause of [Warren's] chronic-pain issues really appear to be multi-factorial, meaning she had some issues with pain before she got hurt, she had some pain issues after the January 07 [work injury], although they seem to improve nicely, she had a significant increase in pain after the motorcycle accident in June of 08. So I felt that the necessity or the need for doing a chronic-pain-management program was only partially related to the January 07 event.

The Commission, as the fact finder, is free to determine the weight to be given to a medical expert's testimony. *Mazzone*, 154 Idaho at 757, 302 P.3d at 724. The Commission did not act improperly by reviewing Dr. Beaver's report and testimony to conclude that Dr. Beaver's opinion of the pain management program did not increase the causal connection between Warren's work accident and her psychological diagnoses. Therefore, there is substantial and competent evidence to support the Commission's finding that Warren failed to establish entitlement to compensation for medical care, such as a pain management program, for a psychological injury under Idaho Code section 72-451.

**E.  The Commission Had Substantial And Competent Evidence To Find That Warren Did Not Suffer PPD In Excess Of PPI.**

Warren argues that the Commission lacked substantial and competent evidence to conclude that she was not entitled to an additional PPI rating and also a PPD rating for her psychological diagnoses after a pain management program. Warren received a PPI rating of five percent from Dr. Stevens. Vocational expert Crum agreed with that rating and found no basis to conclude that Warren sustained any PPD in excess of PPI.

The burden of proof is upon the claimant to prove disability in excess of his impairment rating. The test for such determination is not whether the claimant is able to work at some employment, but rather whether the physical impairment, taken in conjunction with nonmedical factors, has reduced the claimant's capacity for gainful activity. In that determination, I.C. § 72-425 requires the Commission to take into consideration nonmedical factors such as age, sex, education, and economic and social environment.

*Seese v. Ideal of Idaho, Inc.*, 110 Idaho 32, 34, 714 P.2d 1, 3 (1985) (citations omitted).

Warren's argument hinges on Dr. Beaver's testimony that he would be willing to do a follow-up evaluation after Warren attends a pain management program. However, Warren misconstrues Dr. Beaver's testimony, and, more importantly, this Court will not disturb the Commission's determinations of the weight and credibility of evidence unless clearly erroneous. *Mazzone*, 154 Idaho at 755, 302 P.3d at 723. Contrary to Warren's claim, Dr. Beaver did not state in his deposition that Warren would require reassessment following the completion of a pain management program. When asked about the need for reassessment, Dr. Beaver stated, "I'd be hesitant to say whether it absolutely would need to occur or not, because it kind of would depend on how she did in the program . . . but potentially, yes, reevaluating after a pain-management program could have some value." When asked if he would be "willing" to do a follow-up evaluation and report if Warren did attend a pain management program, Dr. Beaver's responded, "Sure, if that's needed." Moreover, when Dr. Beaver was asked in his deposition whether Warren had a psychological impairment from the work injury, he replied, "On a more-probable-than-not-basis, I didn't feel that she warranted a PPI for emotional or psychological difficulties, as indicated in my June 10th, 2011 report." When asked if he believed Warren required any psychological restrictions or limitations related to her work injury, Dr. Beaver stated, "No." In explaining his reasoning, Dr. Beaver stated that Warren did not require psychological restrictions or limitations related to work injury because "Ms. Warren functions broadly in the upper range of average for general intellectual horsepower. . . . She had no significant deficits, either whether it was memory, concentration, multitasking, problem solving. On formal testing she did great." Further, when asked whether he would expect Warren's condition to worsen from a psychological or neuropsychological point of view following attendance at a pain management program, Dr. Beaver responded, "My anticipation would be that she either would remain stable or unchanged, or the hope, of course, would be that she would improve." Dr. Beaver stated that none of Warren's three psychological diagnoses were

"significant enough to warrant either impairment ratings or restrictions." This testimony is not contradicted by any evidence in the record. The Commission was free to give weight and draw reasonable inferences from Dr. Beaver's testimony to conclude that there was no requirement that Warren be reevaluated after a pain management program. Further, as discussed above, the evidence shows that a pain management program was only partially related to Warren's work injury.

The undisputed evidence shows that Warren's capacity for gainful employment has not been reduced by her physical impairment, taken in conjunction with nonmedical factors. Douglas Crum, the vocational evaluator, opined that Warren "likely suffered no loss of access to her local labor market and no loss of wage-earning potential as a result of the work accident." Similarly, Crum testified that Warren "has not lost access to jobs in her labor market" from the work-related injury "because she does not have any permanent restriction associated with her one level cervical fusion associated with that accident." As stated by the Commission:

> Here, [Warren] has returned to work at a more complicated and demanding job than her time-of-injury job. The new job pays significantly more. Also, she works a second job at a winery. [Warren] has shown she is capable of seeking work, obtaining work, and working. No physical restrictions have been recommended. The vocational expert opined [Warren] suffered no disability in excess of PPI. [Warren] failed to show she suffered permanent partial disability in excess of PPI.

Based on the evidence in the record, the Commission had substantial and competent evidence to conclude that Warren did not suffer PPD in excess of PPI as a result of the work injury.

**F.  The Commission Did Not Err In Refusing To Award Warren Attorney's Fees And Costs Below.**

Warren argues that the Commission abused its discretion in failing to award attorney's fees and costs to her pursuant to Idaho Code section 72-804.

The Commission may award attorney fees "[i]f the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee . . . without reasonable grounds . . . ." I.C. § 72-804. "The decision that grounds exist for awarding a claimant attorney fees [under Idaho Code section 72-804] is a factual determination which rests with the Commission." *Page v. McCain Foods, Inc.*, 155 Idaho 755, 760, 316 P.3d 671, 676 (2014) (alteration in original) (quoting *Poss v. Meeker Mach. Shop*, 109 Idaho 920, 926, 712 P.2d 621, 627 (1985)).

The Commission's determination that Warren was not entitled to attorney's fees and costs under Idaho Code section 72-804 was based on its finding that Warren failed to show that Williams & Parsons unreasonably denied or delayed her claim. As properly recognized by the Commission, Williams & Parsons had reasonable grounds to contest Warren's claim for compensation. The decision to award fees and costs is within the boundaries of the Commission's authority and its decision not to do so in this case was exercised with reason.

## G.    Neither Party Is Awarded Attorney's Fees On Appeal.

Warren requests attorney's fees and costs on appeal pursuant to Idaho Code section 72-804 and Idaho Appellate Rule (I.A.R.) 41. Williams & Parsons requests attorney's fees pursuant to I.A.R. 11.2.[2]

"Idaho Code § 72-804 permits the award of attorney fees if it is determined that an employer or its surety contested a workers' compensation claim without reasonable ground." *Mazzone*, 154 Idaho at 761, 302 P.3d at 729. Warren is not entitled to an award of attorney's fees on appeal because she is not the prevailing party and was not entitled to compensation. *See id.*

Idaho Appellate Rule 11.2 provides in relevant part:

> The signature of an attorney or party constitutes a certificate that the attorney or party has read the notice of appeal, petition, motion, brief or other document; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If the notice of appeal, petition, motion, brief, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the notice of appeal, petition, motion, brief or other document including a reasonable attorney's fee.

I.A.R. 11.2. We construe I.A.R. 11.2 in the same manner as Idaho Rule of Civil Procedure (I.R.C.P.) 11(a)(1). *Flying A Ranch, Inc. v. Bd. of Cnty. Comm'rs for Fremont Cnty.*, 156 Idaho 449, 454, 328 P.3d 429, 434 (2014).

---

[2] Williams & Parsons cites to I.A.R. 11.1 and supports its argument using *Shriner v. Rausch*, 141 Idaho 228, 232, 108 P.3d 375, 379 (2005) and *Frank v. Bunker Hill Co.*, 142 Idaho 126, 132, 124 P.3d 1003, 1008 (2005). At the time these cases were decided in 2005, the rule governing an award of attorney fees for appeals not reasonably grounded in fact or law or filed for an improper purpose was I.A.R. 11.1. However, I.A.R. 11.1 was renumbered to I.A.R. 11.2 on March 9, 2009, and effective July 1, 2009. *See* I.A.R. 11.2. I.A.R. 11.1 now governs appealable judgments from the magistrate court. *See* I.A.R. 11.1.

The attorney's or party's signature on a document constitutes two substantive certifications: (a) "that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," **and** (b) "that it [the document] is not interposed for any improper purpose." Both certifications must be accurate in order to comply with the rule. If either of them is not accurate, then the document would be signed in violation of the rule.

*Id.* at 453, 328 P.3d at 433 (alterations in original) (quoting I.R.C.P. 11(a)(1)). In this case, we hold that both certifications by Warren were accurate. Therefore, we decline to award Williams & Parsons attorney's fees on appeal.

## V. CONCLUSION

The decision of the Commission is affirmed. Neither party is awarded attorney's fees on appeal. Costs on appeal are awarded to respondents.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.